Cecil C. SIMPSON, for himself and others similarly situated, Plaintiff in Error,

v.

Max W. CAMPBELL, the Forty-First Street Corporation, an Oklahoma Corporation, and Clyde Winterringer, County Clerk of Tulsa County, Oklahoma, Defendants in Error.

No. 40059.

Supreme Court of Oklahoma.

Nov. 26, 1963.

Rehearing Denied and Opinion Amended April 7, 1964.

Leroy Blackstock, Tulsa, for plaintiff in error.

Ben L. Murdock, and Hudson, Hudson, Wheaton, Kyle & Brett, Tulsa, for defendants in error.

BLACKBIRD, Chief Justice.

This appeal is the culmination of efforts by the plaintiff in error, hereinafter referred to as plaintiff, and others similarly situated, who have purchased homes in a residential area of Tulsa County, to prevent land, described as the North 340 feet of the NE¼ of the NW¼ of Section 27, Township 19 North, Range 13 East of the I. B. M., and hereinafter referred to as "Tract A", from being used for the site of a shopping center, commercial, or similar, buildings, instead of sites for single family residences.

In 1954, this tract, and other contiguous land in the same quarter section was owned by Max W., and Tookah S., Campbell, husband and wife. In that year, the Campbells sub-divided some of their land in the southwestern quarter of said quarter section, abutting the U. S. Highway 66 by-pass, into city blocks and dedicated it as "Blocks 7 to 11", both inclusive, of "Campbell's Fifth Addition" to the City of Tulsa. In creating this Addition to the City, the services of Sisemore Surveying Service, of which H. B. Sisemore is owner, were employed, and a Tulsa builder named L. R. ("Andy") Latch purchased the lots therein, built residence on them, and sold said properties to the public as private homes.

Later the same year, the Campbells decided to sub-divide an additional portion of said quarter section (of which "Tract A" is a part) extending northeast from Blocks 7 through 11, supra, to and along said quarter section's northern boundary. As Sisemore platted this proposed new subdivision, it included the entire northeastern corner of the quarter section, from its northern boundary to the aforementioned highway by-pass, and depicted the area as divided into six city blocks, designated thereon as Blocks "1" to "6", both inclusive, of "Campbell's Fifth Addition"—*with Tract A shown as Blocks "1" and "2" of said Addition,* separated by a proposed street named Fulton Avenue. To distinguish this proposed plat from another one hereinafter discussed, we will call it the "p. plat", and to distinguish the six-block residential area depicted thereon, from the 5-block Campbell's Fifth Addition previously created as aforesaid, we will refer to the newly proposed one as "Northland."

According to the restrictions written on the p. plat, all lots in proposed Northland were to be used for "single family residential purposes only", and two types of such residences were permitted. "Type I" residences were described as having less than "1100 square feet of ground floor area" (commonly called "G. I." homes by builders of that era), while the "Type II" residences

referred to in said restrictions were to have no less than 1250 square feet of ground floor area. Lots 3 through 19, inclusive, or, all except the first two numbered lots, in Northland's Block 6, whose back sides abutted the aforementioned bypass right-of-way, and the north tier of lots (Lots 1 to 14, both inclusive) in its Block 2, which abutted on a proposed service road (and are sometimes referred to as "perimeter" lots) were designated in said restrictions as "Type I" lots.

During the latter part of 1954, or in January, 1955, Mr. and Mrs. Campbell, who were president and secretary, respectively, of The Forty-First Street Corporation, and owned all of its stock except the qualifying shares, entered into an oral arrangement with the afore-named Mr. Latch, who operated a company called "Metropolitan Building Corporation", whereby he, or his corporation, was to have the privilege of buying and building residences upon any and all lots in Northland, as he had done in the already established part of Campbell's Fifth Addition (Lots 7 to 11, both inclusive, supra).

About the time this arrangement was made, the p. plat, drawn for the Forty-First Street Corporation's execution as owner and dedicator by Sisemore—but never executed by him, as surveyor, nor by anyone, as owner of the land—was, on January 20, 1955, received· by the Tulsa Metropolitan Area Planning Commission (hereinafter referred to as "TPC") for investigation, processing, and consideration for that body's approval as contemplated in Title 19 O.S.1953 and 1961, § 863.9.

In or about the same month (January, 1955) members of the Tulsa Homebuilders Association, of which Latch was a member, were having meetings to make plans for a Parade Of Homes to be held in September of that year (1955). Latch was chairman of that organization's Parade Of Homes Committee, and—with Mr. Campbell's consent and approval—proposed to the Committee that Northland be considered as a site for the Parade Of Homes, in

competition with other sites submitted by other developers. As an inducement to holding the Parade there, the builders were promised that they could purchase lots at $300.00 per lot less than their list, or market, prices. At one of the meetings concerning the matter, copies of Northland's p. plat were distributed to those present, and, either then, or at some later meeting in February or March (the exact date not appearing), Northland was selected as the site for the Parade. Tulsa builders, who intended to build houses for display in said Parade, thereupon began to make arrangements to do so, and to advertise the event.

In February, or the early part of March, 1955, the Campbells apparently changed their plans for Tract A and decided not to include it in the proposed new addition. Accordingly, they caused Sisemore to draw a new proposed plat, on which—instead of the land in that tract being depicted as divided into Blocks 1 and 2 of the proposed new addition—it was shown merely as unimproved land, apparently divided by an unimproved extension of Fulton Avenue, and labeled on the plat: "Not Included". It was this plat, duly executed by Mr. and Mrs. Campbell, on behalf of The Forty-First Street Corporation (evidenced by plaintiff's Exhibit 8) that was thereafter filed for record in the office of the County Clerk on March 14, 1955, (hereinafter referred to as Plat No. 1968) as the official plat of Blocks 3–6, inclusive, of Campbell's Fifth Addition. Later that year, plaintiff and others, purchased new homes in the Addition. After Tract A was thereafter zoned for commercial building purposes by the enactment of a Tulsa City Ordinance in 1956, plaintiff, (according to the allegations of his amended petition in this case) filed an application with the TPC, in April, 1956, on behalf of himself and others similarly situated, to re-zone that tract to a U–1 C., or single family residence, area.

After an unfavorable decision from TPC, on his application to re-zone, plaintiff, for himself and other homeowners in that vicinity, appealed to Tulsa's Board of City Commissioners, and, after a public hearing there in 1959, said Board upheld the TPC's decision.

Thereafter, plaintiff instituted this action in 1962, for himself and the other homeowners, naming as defendants therein, the City of Tulsa, as well as the parties appearing here as defendants in error. Since said action was later dismissed as to the City, any further use of the word "defendants" will refer only to the defendants in error herein.

In his lengthy amended petition, plaintiff alleged the facts hereinbefore shown, and others, interspersed with conclusions of law calculated to support one or more theories, or causes of action, on the basis of which the court should subject Tract A to the hereinbefore described residential building restriction, that was originally planned to apply, and would unquestionably have applied, to it *as subdivided into, and dedicated for, Blocks 1 and 2* of Northland, or *Campbell's Fifth Addition*. In other words, plaintiff sought a court judgment that would supersede and nullify the zoning of Tract A for business and commercial purposes, ostensibly accomplished by enactment of the above-mentioned city ordinance of 1956.

Without detailing the various theories upon which plaintiff sought various and sundry types of relief, and/or alternative relief, their substance may be summarized as follows:

### FIRST CAUSE OF ACTION

That plat No. 1968 had never been actually, completely, and officially approved by the TPC, and therefore was not entitled to be recorded, and should be expunged from the records in the office of the County Clerk.

### SECOND CAUSE OF ACTION

That Latch, and/or his company, Metropolitan Building Corporation, and those who collaborated in selling plaintiff, and his neighbors homes in this northeastern part of Campbell's Fifth Addition, were joint venturers and

agents, servants or employees of Max W. Campbell and The Forty-First Street Corporation, which was Campbell-controlled; that said home purchases were induced by representations by, or on behalf of, the named purported Sub-divider, that Tract A would be restricted for single family residences only, as Blocks "I" and "2" of said Addition, thus amounting to an endeavor to permit a general plan of restricted residential development, constituting a common law dedication of all of Northland, as depicted on the p. plat, and entitling plaintiff to enforce in equity, residential restrictions to be imposed on Tract A; that the defendants, Max W. Campbell and The Forty-First Street Corporation, are estopped to deny their dedication of Northland —as depicted and restricted by the representations on the p. plat—and that said defendants should be ordered and enjoined to complete the filing for record of the p. plat in the County Clerk's office, as the sole and official plat of said area.

## THIRD CAUSE OF ACTION

That the action of the defendants Campbell and The Forty-First Street Corporation and their joint venturers, agents, etc., amounted to a fraud and conspiracy to develop Campbell Fifth Addition's Blocks Three through Six, as luxury type homes, and to avoid the force and effect of its restrictive covenants upon Tract A, so that said tract could thereafter be developed for commercial purposes at a high and substantial profit to said defendants. That the court should order and decree that the original and restrictive covenants contained in the p. plat have been duly and legally imposed against said Tract, and should restrain and enjoin the Campbells, The Forty-First Street Corporation, and their successors and assigns from ever violating any of said restrictive covenants.

That the substitution of plat No. 1968 for the p. plat, by Campbell and his corporation, amounted to a purported, or attempted, vacation, or partial vacation, of the p. plat, which did not comply with statutory procedure for such vacations, and would not remove the effect of the p. plat's restrictive covenants; and that the court should so decree, and adjudge that the restrictions which appeared on the p. plat are applicable, and in force and effect, as to all Northland, i. e., Campbell's Fifth Addition, plus, and including, Tract A; and should also enjoin their violation.

## FOURTH CAUSE OF ACTION

That plaintiff has a right, under Tit. 11 O.S.1961, sec. 530, to judgment correcting Plat No. 1968, on file in the County Clerk's office, because it does not purport to include Tract A as did the p. plat.

## FIFTH CAUSE OF ACTION

That the hereinbefore described purported re-zoning of Tract A as a U–3 E area by the TPC and the Board of City Commissioners "was without constitutional or statutory authority."

In their answer, the defendants cited facts hereinbefore set forth, and others, to support their theory that plat No. 1968, was the only valid and binding one in force and effect at the time plaintiff purchased his home; and alleged, inter alia, that, in making said purchase, he did not rely on the p. plat. They specifically denied that they made any representations to plaintiff concerning Campbell's Fifth Addition, or any restriction applicable thereto, and denied that Mr. Latch, and others named in plaintiff's amended petition, were their agents, partners, employees and/or joint venturers, or had any authority from them, as such.

At the trial, the evidence was not conclusive as to whether the p. plat, or plat No. 1968, was the one the TPC intended to, and did, give its final approval. We have carefully examined the record and

have concluded that the evidence is not such as to resolve all doubt as to whether such approval was, or could have been, given to Plat No. 1968 (as exhibited at the trial), notwithstanding the representation in its rubber stamped "CERTIFICATE OF APPROVAL", ostensibly signed by James E. Bush, the TPC's then secretary, that it was so approved on "Feb. 4 1955".

The evidence does conclusively establish, however, that neither the plaintiff, nor any of the other witnesses who claimed to be parties for whom the action was brought, namely, Charles N. McKinney, Mrs. D. J. Adair and Dr. Eugene W. Lewis, purchased their homes in the area until days, or weeks, after the aforementioned date in March, 1955, when Plat No. 1968 ostensibly became a part of the public records in the County Clerk's office. Nor does it appear that any binding contract was made by, or with, the builders of these homes for their construction or sale, or the sale of their sites, before that time.

Also the evidence failed to establish any direct communication, or representation, from Max W. Campbell or The Forty-First Street Corporation, directly to any of these parties, that Tract A was to be restricted as sites for single family residences (as were the Addition's blocks where they selected homes). The testimony of these parties was to the effect that their beliefs, or impressions, at the time they made their purchases—none of which purchases were shown to have occurred until after March 14, 1955—were based either upon statements made to them by their builders (or persons from whom they purchased), and/or upon their having seen, or there having been exhibited to them, copies of the p. plat depicting Tract A as subdivided into Blocks 1 and 2 of the new Addition, and/or upon their having observed physical evidence on said Tract, of preparations for, or installations of, water taps at spaced intervals corresponding to the Block 1 and 2 lot-locations depicted on the p. plat.

The evidence established beyond question that about the time Campbell changed his plans for the Addition, and decided not to include Tract A in the subdivided portion of the Addition as had been depicted on the p. plat, and had previously, through Latch, been offered members of the Tulsa Builders Association as sites for single family residences, he informed Latch, he was "reserving" or "taking it out". As far as the record shows, Latch made no effort to relay, or convey, this information to the other builders who were making arrangements to build and sell homes in the Addition. It was plaintiff's position at the trial that Campbell, or The Forty-First Street Corporation, or both, were responsible for this non-disclosure, as Latch's principal, or joint venturer, and therefore were liable for the claimed resulting deception of plaintiff and others like him, who later bought homes, through him or other members of the Tulsa Home Builders Association, near Tract A in the mistaken belief that said tract would be restricted as Blocks 1 and 2 of Campbell's Fifth Addition.

At the close of the trial in November, 1960, the court took the case under advisement and requested submission of briefs in support of the parties' respective positions. In April, 1961, a judgment was rendered, in general terms, for the defendants; and their counsel were directed to submit findings of fact and conclusions of law "in keeping therewith".

In the course of the 17 findings of fact and 13 conclusions of law submitted by counsel for defendants, and adopted by the court on November 1, 1961—the day that plaintiff's motion for a new trial was overruled—it was specifically determined, in substance and among other things, that Plat No. 1968, was duly and regularly approved by the TPC; that its filing and recording in the office of the County Clerk gave notice to plaintiff, and all others similarly situated and thereafter purchasing lots in the Addition, of said plat's existence; that, in their granting portions, each of said purchaser's lots were described by its number, and block number, in the Addition "according to the recorded plat thereof"; that,

when Campbell filed the p. plat with the TPC, he intended in good faith that all six blocks depicted thereon would be developed exclusively for single family residences, but that he changed his mind and that, in filing plat No. 1968, he was acting in good faith; and that the evidence wholly failed to establish that he or The Forty-First Street Corporation perpetrated a fraud on plaintiff, or those for whom he brought the action, or on the TPC. (Emphasis ours).

After the overruling of plaintiff's motion for a new trial, he perfected the present appeal. The arguments under his PROPOSITION NO. 1" are based upon the premise—which some of the evidence tends to support—that, contrary to the trial court's findings and conclusions, plat No. 1968, never did receive the formal and final approval of the TPC, and therefore, under sec. 863.9, supra, was not entitled to be filed in the office of the County Clerk, and was (in the words of that section) " * * * without force or effect and * * * void as against public policy. * * * " In recognition of the fact that if said plat's filing for record was a nullity, there would still be nothing (capable of doing so) in the public conveyance records of Tulsa County to impose a single family residence restriction on Tract A (in support of plaintiff's position in this case) we forthwith direct our attention to plaintiff's arguments under his "PROPOSITION NO. 2" to determine whether they show a valid basis for such an imposition, with consequent cause for reversing the trial court's judgment.

■ Under said second, and last, proposition, plaintiff contends, in substance, that Campbell, or his alter ego, The Forty-First Street Corporation, or both, as the "developer" of Campbell's Fifth Addition, have estopped themselves from denying that Tract A is restricted for single family residences. Plaintiff cites no case, however, that, in our opinion, supports such property's restriction either on the theory of "negative easement", or because Northland has, in legal contemplation or effect, been "dedicated" with the residence restriction

adhering to its *entire* area, including that tract. While we have no doubt that, ordinarily, if a parcel of land, carved out of a larger tract, is sold while its owner is committed, either by conduct or representations—upon which the present purchaser, both relies and has a right to rely—to a restriction of the whole tract, said owner is in no position to successfully defend against the purchaser's enforcement of such restriction—a conclusion in the present case that neither Campbell, nor The Forty-First Street Corporation, was so committed would neither be contrary to law, nor clearly against the weight of the evidence, nor incompatible with the trial court's judgment. In view of this conclusion, we merely note, without passing on it, the trial court's conclusion that a negative easement cannot be created by parol because such would contravene the Statute Of Frauds.

■ The reason for our conclusion is that neither Campbell, nor The Forty-First Street Corporation, previous to their filing of Plat No. 1968 in the County Clerk's office on March 14, 1955, had done anything constituting a representation upon which plaintiff, or anyone else could, with legal warrant, rely, in thereafter purchasing a lot in Campbell's Fifth Addition. The evidence does not show that plaintiff, or any other proved beneficiary of this action, entered into any binding agreement to purchase their homes until *after* Plat No. 1968 had been of record for a period of days or weeks. Plaintiff cites no law or case, and we know of none, that would support fabrication of a common law dedication out of the facts that, for a few weeks before the recording of that plat, there was a tentative and unexecuted proposal (evidenced by the p. plat) pending before the TPC, without the owner, or owners, of the land involved, or anyone for it or them, doing or saying anything to anyone that would commit them to plaintiff, or those similarly situated, to carry out said proposal. If it were not for these facts, and the absence of proof that plaintiff, or others for whom he brought the action, had *before* such pro-

posal was changed and plat No. 1968 was filed of record purchased, or bound themselves to purchase, a lot or lots in Blocks 3 to 6, inclusive, of Campbell's Fifth Addition, relying on Tract A's being restricted, as originally proposed, then there might be some basis for applying the principles for which plaintiff cites cases such as Nichols, Inc. v. Stoddard, 206 Okl. 240, 242 P.2d 742; Rieger v. Wessel, (Ky.) 319 S.W.2d 855, and Oak Park Cemetery v. Donaldson (Tex.Civ.App.), 148 S.W.2d 944. Nor was there anything filed for record in the County Clerk's office as was the deed to the City in Fortson Investment Co. v. Oklahoma City, 179 Okl. 473, 66 P.2d 96 (also cited by plaintiff) around which to formulate a theory of dedication, estoppel, or negative easement. On the contrary, the document or instrument that was filed for record (Plat No. 1968) before any lots in Blocks 3 to 6, inclusive, of Campbell's Fifth Addition were ever sold, was drawn in such a way as to create doubt, to say the least, that the single family residence restriction, written thereon, applied, or was intended to apply, to Tract A. Whether that plat has ever actually been properly, and finally, approved by the TPC and was entitled to filing under section 863.9, supra, or not, and assuming, without deciding, that it was a nullity as a plat, and ineffectual to import notice to the public that said Tract was restricted, or unrestricted, we cannot escape from the conclusion that its recording was sufficient to provoke inquiry as to the true situation concerning said Tract, and to prevent plaintiff and others similarly situated (who apparently neither for themselves, nor by any agent or attorney, made any such inquiry before later acquiring title by deeds specifically referring to said public record) from successfully, and in good faith, contending that they had purchased in reliance on some contradictory and less relevant representation. None of these parties claimed to have become bound to purchase their homes, believing that their builders, or either of them, was the developer, dedicator, or owner of the land area referred to as "Campbell's Fifth Addition." They are

presumed to have known that the records in the County Clerk's office, are the prime, or first, source of authentic information concerning plats and plat restrictions. As far as the record shows, if they had started an investigation there, and pursued it to a logical conclusion, they would readily have learned that Tract A had been withheld from the single family residence restriction.

Without further detailing, or discussing, any further arguments on behalf of the plaintiff, we are of the opinion that, in view of the foregoing considerations, no error in the trial court's judgment is demonstrated. Therefore, without discussing all of that court's findings and conclusions, some of which may, or may not, be either necessary, or correct, statements concerning the evidence, and/or the applicable law, we hold that said judgment should be, and is, hereby affirmed.

BERRY, J., concurs in result.