**Eleanor Gray KNUDSON, Plaintiff,**

**v.**

**Donald W. WEEKS et al., Defendants.**

**Civ. No. 73–382–D.**

United States District Court,
W. D. Oklahoma,
Civil Division.

March 31, 1975.

Delmer L. Stagner, Oklahoma City, Okl., for plaintiff.

Richard R. Bailey, Oklahoma City, Okl., for Weeks.

Henry F. Featherly, Oklahoma City, Okl., for Hughes.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

In the Spring of 1970 Plaintiff, Eleanor Gray Knudson, came to Oklahoma City, Oklahoma, for the purpose of purchasing a home. She had been employed at the University of California and had accepted employment at the University of Oklahoma as Dean of the College of Nursing. She employed a local real estate agent, Frank Kelley, to assist her. Through Kelley she located a home known as 6008 Queens Gate which is more specifically described as Lot 5, Block 4 of the Lansbrook Addition to Oklahoma City, Oklahoma. On May 10, 1970 Plaintiff contracted to purchase the house from its builder, Defendant Donald W. Weeks. Kelley contacted the Glenn Justice Mortgage Company (Glenn Justice) to obtain a loan for Plaintiff. Glenn Justice found a lender in the Kingfisher Savings and Loan Association (Kingfisher) who was willing to advance a mortgage loan at an agreeable interest rate. Kingfisher in its dealings with Glenn Justice requested a survey of the property. Accordingly Glenn Justice contacted the Hughes Engineering Company (Hughes) and ordered a survey. The order was made on May 26, 1970. On June 3, 1970 a survey of the subject property was made by Hughes. An error was made in the survey as it failed to disclose that the house at 6008 Queens Gate encroached over the rear lot line of Lot 5, Block 4 of Lansbrook Addition. The certificate of encroachments in the survey failed to note this defect. The certificate was delivered to Kingfisher. Hughes was paid for his work by Kingfisher. The cost of the survey was passed on to Plaintiff as an itemized loan closing cost. Plaintiff paid this charge when the loan closed. The sale of the house from Defendant Weeks to Plaintiff was consummated on June 16, 1970.

In August 1970, R. N. Coyle, President of the Lansbrook Association, informed Plaintiff that her house was over its back lot line. Plaintiff then owned and was occupying the property. Coyle stated that the encroachment was into a community owned greenbelt area and that he would take care of the problem. Coyle had learned of the encroachment from Defendants Weeks who had learned of it from a builder who was working on a house next door. The corrective action promised by Coyle was a quitclaim deed from the Lansbrook Association. It was not realized at the time that the encroachment was into a utilities easement which had been dedicated to the City of Oklahoma City. Thus, the community owned greenbelt area at the location here involved was burdened with the utilities easement. The promised quitclaim deed was not executed until April 11, 1972.

In April, 1973 Plaintiff contracted to sell the subject property to one Edward Caston. The contract price was substantially higher than the price for which Plaintiff had purchased the property. The sale to Caston fell through when Caston's mortgage lender ordered a loan survey and discovered the encroachment into the utilities easement and that the title defect had not been fully cured by the quitclaim deed from the Lansbrook Association. Caston's lender declined to advance a mortgage loan on the property with this defect in its title. In an effort to save the sale Plaintiff asked Weeks to escrow the estimated cost of curing the title defect, $7,500.00. Weeks refused to take this action. The contract

between Plaintiff and Caston called for closing on or before May 1, 1973. Several extensions were made, the last one being until May 29, 1973. However, Plaintiff was unable to cure her title defect in this period of time and the sale to Caston was lost.

After the Caston sale failed the title defect was cured at Weeks' expense. On June 14, 1973 Weeks sent a letter to Plaintiff's attorney waiving any statute of limitations concerning any cause of action Plaintiff might have against him. The letter was not supported by consideration. The utilities easement was vacated where the house extended over it. Utility lines were dug up and rerouted and the area was resodded. It developed during this time that the air conditioner pad for the house had been laid over a manhole cover of the sewer which ran behind the house. During the period of time it took to correct these defects economic conditions in the United States changed. Interest rates soared and loans became difficult to obtain. Consequently Plaintiff experienced much difficulty in selling her house after the title defect was cured. When she finally did obtain a buyer she received a much lower price than she would have obtained if the sale to Caston had been consummated.

Plaintiff seeks to recover her losses from Defendants Weeks and Hughes and punitive damages from Defendants Weeks. She states four causes of action, one each in contract and tort against the Defendants Weeks and Defendant Hughes. Non jury trial of the case was conducted and the case has been briefed by all parties both before and after trial. The case can best be resolved by considering each of Plaintiff's four causes of action in turn.

## TORT ACTION AGAINST SURVEYOR

It is Plaintiff's position that Hughes is liable to her in tort for the damages she sustained as a result of his failure to discover the encroachment of the house at 6008 Queens Gate over its back lot line. Hughes does not deny negligence in his performance of the survey. The evidence clearly shows that he was negligent. Instead Hughes asserts that the applicable statute of limitations has run and that he has not breached a duty owed to Plaintiff by his negligent survey.

For actionable negligence to exist there must be a duty on the part of a defendant to protect a plaintiff from injury, the defendant must have breached that duty, and there must be resulting injury to the plaintiff. Nicholson v. Tacker, 512 P.2d 156 (Okl.1973). As a general rule, in order to hold a defendant liable in tort for the breach of a duty arising out of contract there must be privity of contract between the injured party and the defendant. 65 C.J.S. Negligence § 4(11), 35 A.L.R.3d 544 § 3. Older cases generally hold that a lack of privity between a surveyor and a party injured by his negligent performance of a survey will relieve the surveyor of liability. See note 17, 35 A.L.R. 3d 504. However, a number of more modern cases hold that lack of privity between a surveyor and a plaintiff injured [1] by the surveyor's negligent performance of his contractual duty to provide an accurate survey will not relieve the surveyor of tort liability where it is known or foreseeable that the plaintiff will rely on the results of the survey and the extent of potential liability is limited both in possible number of occurrences and in number of persons who could be injured. Rozny v. Marnul, 43 Ill.2d 54, 250 N.E.2d 656 (1969); Tartera v. Palumbo, 224 Tenn. 262, 453 S.W.2d 780 (1970). These decisions are founded on the erosion of privity in the field of products liability. In view of the adoption of the doctrine of Manufacturer's Products Liability by the Supreme Court of Oklahoma in Kirkland v. General Motors Corporation, 521 P.2d 1353 (Okl. 1974) it seems likely that Oklahoma

1. Such injury is generally sustained through the plaintiff's reliance on a surveyor's certificate furnished by the surveyor to the third party with whom plaintiff has contracted.

would also extend the liability of a surveyor to include persons not in privity of contract with the surveyor but who satisfy the abovementioned criteria.

However, it is unnecessary for this Court in this case to determine whether the Supreme Court of Oklahoma would so extend the liability of a surveyor. Assuming arguendo that Hughes would be liable in tort to Plaintiff under the facts of this case, it is apparent that the applicable statute of limitations ran before Plaintiff filed her Complaint. The undisputed testimony of the witnesses shows that Plaintiff was informed her house encroached over its rear lot line in August of 1970. She was informed by Coyle at that time that the encroachment was into the greenbelt area and that he would take care of the problem. It does not appear the Plaintiff had actual knowledge that the encroachment was actually into a utilities easement until the Caston sale fell through. Nevertheless, it must be held that Plaintiff's lack of actual knowledge as to her precise cause of action did not toll the running of the applicable statute of limitations in this case.

As a general rule, the mere ignorance of the existence of a cause of action or the facts constituting a cause of action on the part of a person in whom a cause of action lies will not toll its running. This rule applies unless a statute specifically provides that the limitations do not begin to run until the person in whom the cause of action lies has actual knowledge of it, or unless there has been a fraudulent concealment of the cause of action on the part of the person against whom it lies. 54 C.J.S. Limitations § 205. The statute of limitations begins to run when a cause of action accrues and a cause of action accrues when a plaintiff could first successfully maintain an action thereon. Turner v. Sooner Oil & Gas Co., 206 Okl. 344, 243 P.2d 701 (1952); Bowman v. Oklahoma Natural Gas Company, 385 P.2d 440 (Okl.1963).

It is Plaintiff's position that the two year tort statute of limitations provided by 12 Oklahoma Statutes 95, Third, did not begin to run against her until she had actual knowledge of the encroachment into the utilities easement rather than the greenbelt. There is no Oklahoma Statute providing that such actual knowledge is a prerequisite to the accrual of a cause of action sounding in tort. Therefore, Plaintiff attempts to bring herself within the fraudulent concealment exception to the general rule. She cites and relies on Seitz v. Jones, 370 P.2d 300 (Okl.1962) wherein the court held that a tort cause of action based on a physician's malpractice did not acrue until the plaintiff learned of the physician's negligence. Plaintiff attempts to analogize the surveyor's negligence to the physician's malpractice. Obviously the special physician-patient relationship is absent in the case of a surveyor's and client. Further, the facts of the Seitz case are clearly distinguishable from the facts of this case. In Seitz the plaintiff's physician left a needle in her body during an operation. Thereafter, the plaintiff complained of pain but the physicians did nothing to locate the cause of the pain. The court found that it was the physician's inaction which delayed the discovery of the tort and which prevented the statute of limitations from running. The court found that such inaction amounted to fraudulent concealment and that the physician could not take advantage of the statute of limitations in these circumstances due to his wrong.

Plaintiff cannot take advantage of the professional malpractice exception announced in Seitz. This rule is a mere expression of the fraudulent concealment rule. It cannot be said that Hughes took any action comparable to the action of the physicians in Seitz which would have the effect of concealing from Plaintiff the existence of her cause of action. There being no fraudulent concealment or statute which would delay the accrual of Plaintiff's cause of action, if any,

against Hughes, the applicable limitations period would begin to run as soon as Plaintiff bought the property, or at the latest, no later than August of 1970.

Not only would Plaintiff's cause of action have accrued no later than August of 1970 under the aforementioned general rule, it would have also accrued in August 1970 under the doctrine of constructive notice. 25 Oklahoma Statutes § 12 provides that every person who has actual notice of circumstances sufficient to put a prudent person on inquiry as to a particular fact has notice of the fact. When Plaintiff learned her house was over its back lot line she had notice of circumstances sufficient to put a prudent person on inquiry as to the effect of the encroachment. Such inquiry would have led her to the knowledge that the house was over the utilities easement. Thus she had constructive notice of the encroachment through inquiry. See Palmer v. Crews Lumber Co., 510 P.2d 269 (Okl.1973).

Plaintiff also had constructive notice that her house was over the utilities easement through the recorded plat of the property. A copy of the plat of the Lansbrook Addition was introduced into evidence. This plat clearly shows the utilities easement running immediately behind Plaintiff's lot. 16 Oklahoma Statutes § 16 reads as follows:

"Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors."

The recordation of a plat constitutes a conveyance within the meaning of 16 Oklahoma Statutes § 16 for 11 Oklahoma Statutes § 515 reads as follows:

"When the plat or map shall have been made out and certified, acknowledged and recorded as required by this Article, every donation or grant to the public, or any individual or individuals, religious society or societies, or to any corporation or body politic, marked or noted as such on said plat or map, shall be deemed in law and equity a sufficient conveyance to vest the fee-simple of all such parcel or parcels of land as are therein expressed, and shall be considered to all intents and purposes a general warranty against such donor or donors, their heirs or representatives, to said donee or donees, grantee or grantees, for his, her or their use for the uses and purposes therein named, expressed and intended, and no other use and purpose whatever; and the land intended to be used for the streets, alleys, ways, commons or other public uses in any town or city or addition thereto shall be held in the corporate name thereof in trust to and for the use and purposes set forth and expressed or intended."

Thus, under the statutes of the State of Oklahoma Plaintiff is charged with constructive notice of the contents of the recorded plat covering her property. Also, the Oklahoma State Courts have frequently held that a purchaser of property which is covered by a recorded plat is charged with constructive notice of the contents of the plat as it pertains to his property. Southwest Petroleum Co. v. Logan, 180 Okl. 477, 71 P.2d 759 (1937); Morton v. Clearview Homes, 324 P.2d 543 (Okl.1958); Simpson v. Campbell, 391 P.2d 245 (Okl.1963).

In view of these applicable rules of law it must be held that Plaintiff's cause of action in tort, if any, against Defendant Hughes occurred no later than August of 1970. The applicable statute of limitations being two years and Plaintiff having filed her Complaint herein on June 1, 1973, any tort cause of action which Plaintiff might have had against Hughes is barred by limitations.

## TORT ACTION AGAINST BUILDERS

Plaintiff's tort action against the builders of the subject house, Donald W.

and Marilyn Weeks, is based on the theories of constructive fraud and deceit. The evidence shows that the Defendants Weeks were the builders of the house. Plaintiff purchased the house from them and was the first owner-occupier. Donald W. Weeks purchased Lot 5, Block 4, Lansbrook Addition in 1969. He began construction of 6008 Queens Gate in late 1969. When the dimensions of the house were initially laid out in the lot Donald W. Weeks was in the hospital due to a heart attack. As a result, his wife, Defendant Marilyn Weeks, supervised the early stages of construction. She did not ordinarily perform this type of work. Either at the time the house was laid out or at the time the slab (foundation) was poured a mistake was made and the slab was extended over the rear lot line. Donald W. Weeks learned of the mistake in July of 1970 from a neighboring builder. He informed Coyle who informed Plaintiff. Weeks testified he did not have actual knowledge at that time that the house was over a utilities easement.

It is Plaintiff's position that when Donald W. Weeks learned that the house was over its rear lot line he knew or should have known that it was over the utilities easement. Plaintiff contends that Donald W. Weeks had an affirmative duty to inform Plaintiff of the situation and that he did not do so because she might have rescinded the purchase or have forced him to remedy the defect. Plaintiff further states that the two year statute of limitations applicable to tort actions based on fraud, 12 Oklahoma Statutes 95 Third, did not begin to run until she learned that the house was over the utilities easement in 1973. It is Defendants Weeks' position that Plaintiff has failed to prove an essential element of actionable fraud and that the applicable statute of limitations has run.

 In Oklahoma the laws relating to damages for fraud and deceit sound in common law fraud. Nutt v. Carson, 340 P.2d 260 (Okl.1959). One of the essential elements of common law fraud is knowledge on the part of a person making a representation that the representation is false, or his reckless disregard of whether it is true or not. Nutt v. Carson, *supra,* 37 CJS Fraud § 3. It is Plaintiff's position that Defendants are guilty of constructive fraud under 15 Oklahoma Statutes § 59, and deceit under 76 Oklahoma Statutes §§ 5 and 6 in that Donald W. Weeks knowingly failed to disclose to Plaintiff that her house was over the utilities easement. An essential element of such guilt would be knowledge on the part of Weeks that the house was over the utilities easement. Proof of fraud must be clear, strong, and convincing. Jewell v. Allen, 188 Okl. 374, 109 P.2d 235 (1941). Fraud is never imputed, findings of fraud should never be sustained on circumstances which only create suspicion of fraud. Houston Oilers, Inc. v. Neely, 361 F.2d 36 (Tenth Cir. 1966).

 Plaintiff's proof of fraud herein is only circumstantial and at best creates only a suspicion of fraud. She submits that Weeks must have known that the utilities easement was directly behind Plaintiff's back lot line because of his intimacy with the Lansbrook Addition. She argues that because he must have known the easement was right behind the lot he must have realized that the house was over the utilities easement when he learned it was over the lot line. This evidence does not convince the Court that Weeks knew the house was over the utilities easement. Thus, an essential element of constructive fraud and deceit is lacking. Plaintiff has failed in her evidence to show constructive fraud and deceit under the stringent requirements to establish the same in a Court of law.

Moreover, assuming arguendo, that Plaintiff had shown Weeks knew the house was over the utilities easement when he learned it was over the rear lot line and assuming further that Weeks was under an affirmative duty to dis-

close this information to Plaintiff,[2] the statute of limitations pertaining to constructive fraud and deceit would have run on Plaintiff before she filed this action. In cases of fraud the statute of limitations begins to run only when a plaintiff discovers the fraud or should have learned of it through the exercise of due diligence. Phillips v. Ball, 358 P.2d 193 (Okl.1950); Holmes v. McKey, 383 P.2d 655 (Okl.1962); Sade v. Northern Natural Gas Company, 483 F.2d 230 (Tenth Cir. 1973). In considering Plaintiff's tort action against Defendant Hughes it has been determined that Plaintiff had constructive notice of the encroachment over the utilities easement in August of 1970. This notice was imputed to Plaintiff both through the duty of reasonable inquiry and through her recorded plat. Therefore, she is chargeable with discovery of the fraud through the exercise of reasonable diligence in August of 1970 and notice thereof through her recorded plat. The applicable limitations period is two years as stated above. Plaintiff did not file her complaint until June 1, 1973. Therefore, her tort action against the builders is barred by limitations.

Plaintiff has previously asserted that the above mentioned letter from Weeks to her purporting to waive any statute of limitations as to any action she might have against him constitutes a waiver of limitations in this case. Plaintiff has now withdrawn this theory. Therefore, it is unnecessary for the Court to reach this issue. The Court will note, however, that the letter was executed after the tort statute of limitations had run and that it was unsupported by consideration.

## CONTRACT ACTION AGAINST SURVEYOR

Plaintiff contends that she is entitled to recover in contract from Defendant Hughes the damages she sustained as a result of her loss of the Caston sale. It is her position that she contracted with Hughes for the aforementioned survey and that she is entitled to recover for Hughes' breach of contract to provide an accurate survey. In the alternative Plaintiff asserts that she is the third party beneficiary of Hughes' contract to survey 6008 Queens Gate. Hughes contends that his contract to survey 6008 Queens Gate was with Kingfisher and not Plaintiff, that Plaintiff was not the third party beneficiary of the contract, and that the applicable statute of limitations has run.

The facts developed at trial relating to Hughes' agreement to survey 6008 Queens Gate are as follows: Plaintiff employed Kelley to assist her in the purchase of the subject property. Kelley contacted the Glenn Justice Mortgage Company in an effort to find a mortgage loan. Glenn Justice found a willing lender in Kingfisher. Kingfisher requested a survey for encroachments as a prerequisite to its advancement of a loan. Accordingly Glenn Justice contacted the Hughes Engineering Company. The order for the survey was taken. A copy of the Hughes Engineering Company form upon which this order was taken was introduced into evidence. The order is dated May 26, 1970. The order form bears the notation "Justice—Elinor Gray Knudson". The order form was also used by the surveyor for noting the field measurements of the survey. The field measurements are dated June 3, 1970. On June 4, 1970 Hughes prepared

2. Plaintiff has cited no cases which show that a seller who learns of a defect in his title after a sale has been consummated is under an affirmative duty to disclose the defect to his grantee. The case cited by Plaintiff pertains to a seller's failure to disclose a title defect during the negotiations stage of a sale where the seller, at that time, knows of the defect and knows that the buyer is relying on the title as being good. Under such circumstances there is a duty to disclose. However, in this case, there is no evidence that during the negotiations stage Weeks knew of the encroachment.

a certificate of encroachments covering the property. This certificate was delivered to Kingfisher. Kingfisher paid Hughes for his work. Kingfisher passed the cost of the survey along to Plaintiff as an itemized closing cost. Plaintiff paid the cost when the loan closed.

Plaintiff has failed to show through her evidence that she was a party to a contract with Hughes for a survey of 6008 Queens Gate or that she was a third party beneficiary to such a contract. The evidence shows that Kelley was the special agent of Plaintiff hired for the purpose of facilitating the purchase of the subject property. The scope of Kelley's authority included finding a mortgage lender for the property. It is clear that Kelley had actual authority to find such a lender. 2A CJS Agency § 147. It is also clear that it was within the scope of Kelley's agency to appoint Glenn Justice his sub-agent for the purpose of finding a lender. 3 CJS Agency § 261. The evidence further shows that in this case Glenn Justice acted as a mortgage broker. 12 CJS Brokers § 1.[3] A broker is in a sense an agent. However, agency is a broader term than broker. The chief feature which distinguishes a broker from other classes of agents is that he is an intermediary or a middleman and in effecting a sale or exchange of property acts in a certain sense as agent of both parties to the transaction. 12 CJS Brokers § 4. A broker is ordinarily a special agent of his client and that relationship is governed by the rules of law applying to principal and agent generally. A broker's relationship, as agent, to his client is not affected by the fact that he assumes the position of principal towards third persons with whom he deals. 12 CJS Brokers § 11. A broker is primarily the agent of the party who first employs him but may act as the agent of both parties -in bringing them together or in executing the contract after it has been agreed on by the parties. 12 CJS Brokers § 14. Dual agency is not per se improper. 2A, CJS Agency § 32. The general rule that an agent may not act as agent for both parties to the same transaction does not apply to cases in which the interests of the two principals are not conflicting so that loyalty by the agent to one of them does not comprise a breach of his duty to the other. An agent may act as agent for both parties to the same transaction where there is not conflict of duty or where his duty to each does not require the doing of inconsistent things. The rule barring a dual agency does not apply where the agent exercises no discretion in the matter as may be the case where the agent acts merely to bring the parties together and they themselves settle the terms. Accordingly, one of the parties may appoint the agent of the other to act for him for a particular purpose. 3 CJS Agency § 279, Self v. Gilbert, 105 Okl. 140, 231 P. 870 (1924).

Plaintiff's whole case is that Glenn Justice was acting as her agent in ordering the survey from Hughes. It is her position that she was the disclosed principal of Glenn Justice. However, the evidence does not, by a preponderance, establish this position. It appears equally likely, indeed more so, that when Glenn Justice placed the survey order with Hughes it was acting as the agent of Kingfisher and Kingfisher was its disclosed principal. It would not be improper under these facts for Glenn Justice to act in this limited scope as agent for both parties. Hughes delivered the survey to Kingfisher and was paid for his work by Kingfisher. The fact that the cost of the survey was passed on to Plaintiff does not outweigh these facts. Plaintiff had the burden of proving her alleged contract with Hughes and has failed to sustain it.

Plaintiff's contention that she was the third party beneficiary of

---

3. A mortgage broker is defined as one who arranges a loan to be secured by a trust deed or other lien on the borrower's real property. Tushner v. Savage, 219 Cal.App. 2d 71, 33 Cal.Rptr. 247 (1963).

the Glenn Justice-Hughes contract is patently without merit. Under 15 Oklahoma Statutes 29 a third party beneficiary may not recover under a contract unless it is expressly made for his benefit. Plaintiff has not shown that the contract was made expressly for her benefit. She argues that the notation on the order form shows that the contract was made for her benefit. This argument does not pass muster. The circumstances show that the survey was made for the express benefit of Kingfisher and that Plaintiff was only an incidental beneficiary in that the loan could close if the survey was acceptable.

▮▮ Hughes' argument that the statute of limitations had run is without merit. The applicable limitations period for a contract not in writing is three years. 12 Oklahoma Statutes § 95(2). He argues that the statute began to run on May 26, 1970, the date that Glenn Justice placed the order. However, a cause of action does not accrue nor does a statute of limitations begin to run until a plaintiff could first successfully maintain an action. Turner v. Sooner Oil & Gas Co., *supra*; Bowman v. Oklahoma Natural Gas Company, *supra*. No cause of action could be maintained on Hughes' survey until he performed it. The field survey was on June 3, 1970 and the certificate was prepared on June 4, 1970. The Complaint was filed on June 1, 1973 and was therefore timely.

## CONTRACT ACTION AGAINST BUILDERS

It is Plaintiff's theory that she is entitled to recover damages from Defendants Weeks for their failure to convey to her merchantable title to the subject property. On May 10, 1970 Plaintiff and Weeks entered into a real estate purchase contract whereby Plaintiff agreed to buy and Weeks agreed to sell the subject property. The contract called for the conveyance of merchantable title by the seller. On June 16, 1970 Weeks and his wife executed a warranty deed conveying the subject property to

Plaintiff in performance of the contract. Subsequently it developed that the deed had failed to convey merchantable title. Plaintiff alleges this failure cost her the Caston sale. After the sale fell through Weeks caused the title defect in the subject property to be corrected.

▮▮ Plaintiff contends Defendants Weeks are liable to her for the damages she sustained by her loss of the Caston sale in that they failed to convey merchantable title as was called for in the May 10, 1970 purchase contract. Defendants Weeks do not deny the contract or breach thereof. It is, however, their position that the May 10, 1970 purchase contract was merged into their June 16 warranty deed, that Plaintiff is only entitled under the law to recover under the warranties of said deed, that recovery under the warranties is limited to the cost of curing the title defect and that they have already cured the defect and paid the cost thereof.

26 CJS Deeds § 91c reads, in part, as follows:

"As a general rule, a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, including all prior negotiations and agreements leading up to the execution of the deed, but such rule is subject to exceptions, and independent and collateral agreements are not merged."

This is the rule in Oklahoma. Watson v. Johnson, 411 P.2d 498 (Okl.1965); Anchor Stone & Material Co. v. Pollok, 344 P.2d 559 (Okl.1959). The exceptions to the general rule are cases involving fraud or mistake. 26 CJS Deeds § 91 c; Anchor Stone & Material Co. v. Pollok, *supra*; Lively v. Davis, 410 P.2d 851 (Okl.1966); Strouhal v. Allied Development Co., 220 F.2d 541 (Tenth Cir. 1955). The question of merger is controlled by the intention of the parties, which is to be determined from the instruments and the surrounding circumstances. If the merger of a prior contract into a deed is denied, the burden of proof rests on the party denying the

merger to show that merger was not intended. 26 CJS Deeds § 91c.

■ Plaintiff relies on her allegations of fraud as the basis of her contention that the May 10, 1970 contract was not merged into the subsequent warranty deed. It has been previously determined that Plaintiff has not proven fraud on the part of the Defendants Weeks. Therefore, this contention is without merit. This leaves the possibility of mistake to prevent the merger of the contract into the deed. It is evident that mistake was present in the transaction as the house was mistakenly over the property line. However, this is not the type of mistake contemplated by the rule. In 55 Am.Jur. 333 it is stated, "If through mistake or fraud the purchaser is induced to accept a deed which covers land other than that included in the agreement, it will not operate as a discharge of the executory contract." In Vol. III, American Law of Property, § 11.65, Am.Law Inst., it is stated:

> "With some exceptions in the case of a material mistake as to quantity or acreage, a contract of sale is usually discharged by merger in any conveyance delivered and accepted in fulfillment of it, and the deed rather than the contract thereafter determines the rights and liabilities of the parties in respect to the land conveyed . . ."

The mistake herein did not induce the Plaintiff as purchaser to accept a deed which covers land other than that covered by the contract nor was there a material mistake as to the quantity or acreage in the land conveyed as a result of the mistake. The facts herein presented are analagous to the facts of McClelland v. Ehrig, 65 Okl. 174, 156 P. 307 (1916), wherein a vendor contracted to convey one hundred and fifty-five acres, the contract was performed through the execution of a deed, it subsequently developed the vendor lacked title to ten of the acres covered by his deed. The vendee brought an action on the contract which was sustained by the trial court. The Supreme Court of Oklahoma reversed holding that the deed was a complete execution of the contract and if there was any defect in the title to the land conveyed any action based thereon would have to be brought on the covenants of the deed.

In a case directly in point, Pybus v. Grasso, 317 Mass. 716, 59 N.E.2d 289 (1945), a vendor contracted to convey a certain lot with the improvements thereon. The contract was performed through the execution of a deed. Thereafter, it developed that the improvements encroached into a neighboring lot. The Massachusetts Court held the vendee was limited to his remedies on the warranties of the deed and could not maintain an action on the underlying contract.

■ The facts of this case do not show fraud or the type of mistake which has been held to prevent merger. Moreover, the burden of proof is on Plaintiff to show that the parties did not intend that the contract merge into the deed. Plaintiff has wholly failed to submit any evidence whatsoever which would overcome the presumption that she intended the contract to merge into the deed. Therefore, the May 10, 1970 contract merged into the deed and Plaintiff is limited to her remedies on the warranties of the deed.

■ Defendants Weeks conveyed the subject property to Plaintiff by a statutory warranty deed. The statutory covenants of title under the Oklahoma law are seizin, right to convey, against incumbrances, quiet possession, and warranty. 16 Oklahoma Statutes 19. Plaintiff has not addressed the question of which of these covenants may have been broken by the Weeks' conveyance, or what damages may be recoverable thereunder. Defendants Weeks admit that they have broken either the covenant of seizin or right to convey, which are synonomous in Oklahoma, Schiff v. Dixon, 204 Okl. 112, 227 P.2d 639 (1951), or the covenant against incumbrances, but contend that in either event, under the cir-

cumstances of this case, the Plaintiff is not entitled to further recovery.

There are two Oklahoma Statutes delineating the damages recoverable by a grantee for a grantor's breach of covenant in the execution of a warranty deed. 23 Oklahoma Statutes § 26 provides the measure of damages for the breach of the covenant against incumbrances and 23 Oklahoma Statutes § 25 provides the measure of damages for the breach of any of the other statutory covenants. It does not appear that the covenant against incumbrances was breached by the Defendants Weeks herein. In general, the covenant against incumbrances extends to adverse claims or liens on the estate conveyed whereby it may be defeated wholly or in part. 21 CJS Covenants § 42. An incumbrance may be defined as any right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee. Black's Law Dictionary, Fourth Edition. The subject house extended over the back lot line and into an adjacent common greenbelt area burdened with a utilities easement. The Lansbrook Association did not have an incumbrance against said Lot 5, Block 4 as a result of the encroachment of the house on said lot onto the greenbelt. An easement is a liberty, privilege or advantage without profit which the owner of one parcel of land may have in the lands of another. 28 CJS Easements § 1a; Frater Oklahoma Rlty. Corp. v. Allen Laughon H. Co., 206 Okl. 666, 245 P.2d 1144 (1952); Lynn v. Rainey, 400 P.2d 805 (Okl.1954). An easement is an incorporal hereditament, it does not confer title to land or create a lien thereon. 28 CJS Easements § 1b. It appears from the plat of the Lansbrook Addition that the subject utilities easement is appurtenant to Lot 5, Block 4, the commons or greenbelt area being the servient estate. Thus the warranty deed from the Defendants Weeks to the Plaintiff did not pass title to the land or the dominant utilities easement over both

of which the house encroached. As the title to the land and the dominant utilities easement on which the house encroached did not pass by Defendants Weeks' Warranty Deed, it cannot be said that this defect in title constituted an incumbrance within the abovementioned definitions. Therefore, reliance on 23 Oklahoma Statutes § 26 would be misplaced and if a covenant of title was breached, the measure of damages is provided by 23 Oklahoma Statutes § 25.

As has been previously mentioned the covenants of seizin or right to convey are synonymous in Oklahoma. The covenant of seizin is that the covenantor has the estate he purports to convey. 21 CJS Covenants § 40. It is apparent that the Defendants Weeks purported to convey both the subject house and the ground upon which it stood. This they failed to do as they had no title to the ground in the green belt burdened with the utilities easement upon which part of the house encroached. Therefore, their covenants of seizin and right to convey were breached when the deed was executed. The measure of damages provided by 23 Oklahoma Statutes § 25 for such a breach is as follows:

"The detriment caused by the breach of a covenant of seizin, of right to convey, of warranty, or of quiet enjoyment, in a grant of an estate in real property, is deemed to be:

1. The price paid to the grantor, or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore, at the time of the grant, to the value of the whole property.

2. Interest thereon for the time during which the grantee derived no benefit from the property, not exceeding six years; and,

3. Any expenses properly incurred by the covenantee in defending his possession."

The applicable measure of damages under this statute in this case is such proportion of the purchase price of the

subject house paid by the Plaintiff to the Defendants Weeks as the value of the property affected by the breach (area of encroachment) bore, at the time of the grant, to the value of the whole property. What then is the value of the property affected by the breach? In the case of unimproved land of uniform unit value, the measure of damages under this statute for a grantor's partial breach of covenant of seizin, such as is the case herein, could be ascertained by determining the unit value (square foot, acre) of the property, and multiplying that value times the number of units which the grantor purported to convey but failed to convey. In this case, however, the value of the property affected by Defendants Weeks' breach of covenant of seizin goes beyond such a simple solution. The breach of covenant of seizin herein (the encroachment) affected the value of Plaintiff's entire house. As a result of the encroachment part of Plaintiff's house was on land on which she had no right to maintain it. The effect of the breach was that Plaintiff had either to move her house off of the easement, cut off the part of the house which was over the easement, or to acquire the land upon which the encroachment rested and vacate the easement and move the utilities lines. The cost of performing one of these acts is the true measure of the value of the property affected by Defendants' breach of covenant herein.[4] Defendants Weeks have already sustained the cost of acquiring the needed land, vacating and re-routing the easement and moving the utilities lines. Plaintiff has accepted their curative efforts. Thus in effect Defendants Weeks have already tendered damages for their breach of covenant of seizin and Plaintiff has accepted the tender. Defendants Weeks have satisfied the statutory measure of damages applicable in this case. There-

fore, further recovery by Plaintiff is precluded.

Based on the foregoing Defendants should have judgment against the Plaintiff in which her several actions against them are dismissed. Counsel for Defendants will collaborate and prepare an appropriate judgment based on the foregoing for submission to the Court within ten (10) days from the date hereof.

---

4. It does not appear that the Supreme Court of Oklahoma has had occasion to consider the question presented herein. It is the belief of this Court that the Supreme Court of Oklahoma would interpret 23 Oklahoma Statutes § 25 as it has been interpreted herein.