## TURNER v. SOONER OIL & GAS CO. et al.

No. 34832. April 23, 1952.

243 P. 2d 701.

W. A. Barnett, Okmulgee, for plaintiff in error.

Earl Foster and Earl Foster, Jr., Oklahoma City, and A. Langley Coffey, Tulsa, for defendant in error.

PER CURIAM. This is an action wherein plaintiff in error, plaintiff below, sought to recover a money judgment on a contract to drill an oil and gas well entered into with the defendant Sooner Oil & Gas Company, an Oklahoma corporation which appears to have been dissolved subsequent to the making of the contract and prior to the bringing of the action. The defendants, George F. Collins, Jr., H. C. Hugh, Frank P. Collins and C. F. Pfeffer, are alleged to have been stockholders, directors and officers of the defendant corporation at the time of its dissolution and recovery against them seems to be sought upon the theory that the plaintiff was not notified of the contemplated dissolution and thus prevented from filing his claim for payment prior to dissolution. Recovery against the corporate defendant is based on the contract, a copy of which is attached to plaintiff's petition.

The contract sued on is a common form of agreement quite generally used in the oil industry for drilling oil and gas wells and calls for drilling of a well to a depth sufficient to test the Taneha sand found at a depth of approximately 2,200 feet, unless oil and gas is found in paying quantities at a lesser depth. Plaintiff was required to start drilling within 15 days and to continue the drilling with diligence until the well was completed. He was to be paid $1.65 per each foot drilled, payment to be made immediately upon

completion of the well if a producer or immediately upon plugging if a dry hole.

The contract further provides that if the defendant corporation directed a reduction in the size of the hole at any point above the Taneha sand, it would pay plaintiff $35 per tour of 12 hours for straight reaming the size of the smaller hole to the size of the hole before it was reduced in addition to the $1.65 per foot. It was also agreed that when the top of any probable producing sand was reached, the corporate defendant should take over the well at that time and "superintend and direct the drilling in of said well and shall so supervise said drilling" until it decided to stop or directed plaintiff to drill ahead. All of such work supervised by defendant was to be paid for at the rate of $35 per tour of 12 hours and was to be considered as "day work" and footage so drilled was not to be included in the total footage to be paid for at $1.65 per foot. It also provided that such "day work" should include the completion of the well as a producer and the plugging if a dry hole.

Plaintiff in his petition alleges that he drilled the hole to a depth of 1,993 feet, when on April 18, 1944, he encountered a formation which required shutting down the well, bailing water and waiting for orders and directions from the defendant Oil and Gas Company which assumed direction of the "further process of cleaning and drilling said well". That plaintiff proceeded under orders and directions to work on said well for additional 180 days. Just what he did is not apparent from the petition, but he says that the 180 days of work was performed under paragraphs 7 and 8 of the contract, paragraph 7 being the paragraph calling for $35 a day in addition to the footage payment for straight reaming of a smaller hole, and paragraph 8 providing for supervised drilling when a probable producing sand had been reached and payment of $35 a day in lieu of the footage payment of $1.65 and covered the completion of the well if a producer and the plugging if a dry hole.

Apparently the work done during the 180-day period resulted in deepening the well from 1,993 feet to 2,110 feet at which point plaintiff lost his tools in the hole. This was 180 days or 6 months after April 18, 1944, or not later than October 18, 1944.

It is then alleged that on November 14, 1945, or more than a year thereafter, by mutual consent of the parties to the contract, the well was abandoned and the hole plugged under the direction of the Oklahoma Corporation Commission.

Based on these facts, plaintiff sought to recover for 1,993 feet at a $1.65 per foot or $3,288.45 plus 180 days work at $35 per day, or the sum of $6,300, praying judgment for the total sum of $9,-588.45.

To this petition the defendants demurred on the ground, (1) that the petition shows on its face that the alleged cause of action is barred by the statutes of limitations in such cases made and provided; (2) that the petition does not state facts sufficient to justify a cause of action in favor of the plaintiff and against the defendants or any of them.

The demurrer was sustained by the trial court and the plaintiff refusing to plead further, the cause was dismissed.

The cause is here on a transcript of the record.

The only cause of action attempted to be stated against the individual defendants, who were not parties to the contract, is based upon the alleged fact that the plaintiff did not have notice of the dissolution proceedings. These proceedings were had in the district court of Creek county and are made a part of the petition by reference and were obviously before the trial court when he had the demurrer under consideration. They were not shown in the transcript and hence there is no factual basis upon which this court can deter-

mine the correctness of the trial court's ruling.

The petition alleges that the corporate defendant did file its petition for dissolution in the district court of Creek county on October 16, 1948, and thereafter the court entered its order of dissolution and distribution of its assets. We think it only reasonable to assume that when the district court of Creek county entered its order of dissolution, it found that all proper notices were given concerning the dissolution as required by law. It is true plaintiff alleges he had no actual notice of the dissolution proceeding.

We held in Wagner v. Land, 152 Okla. 225, 4 P. 2d 81, that:

"The allegations of a petition must be construed in connection with the exhibits attached and referred to in the petition."

And in School District No. 60 of Ellis County v. Crabtree, 146 Okla. 197, 294 P. 171, that in case of conflict between the allegations of the petition and the attached exhibit, the provisions of the exhibit governed notwithstanding the allegations of the petition.

Title 18, being the Business Corporation Act of the State of Oklahoma, prescribed a complete method for dissolution of an Oklahoma corporation. Section 1.185 (a) gives jurisdiction to the appropriate district court, and (b), "Such court shall have full authority over the presentation and proof of all claims and demands against the corporation, whether due or not, or not yet due, or contingent, or unliquidated or sounding only in damages, and the barring from participation of creditors and claimants failing to make and present claims and proofs as required by any order."

It further provides that notice by publication shall be given to creditors directing all creditors and claimants to make and present claims and proof to the persons at the place and within the time limited by order of court and that a copy of such notice shall be mailed within six days after the first publication thereof to each creditor or claimant as shown by the books of the corporation.

Section 1.226 requires the court to make 8 specific findings in its order of dissolution, No. 3 being "That such notices, hearings and findings, if any, as required by law, have been completed."

It thus appears that plaintiff's claims could very well have been barred by the dissolution proceedings, even though as he states he did not personally receive notice of it. The importance of the omitted exhibit is clearly demonstrated.

We held in W. A. Wade v. Edward F. Mitchell, 14 Okla. 168, 79 P. 95, that:

"Where a transcript on appeal fails to show affirmatively that it contains a true, full and complete copy of all the proceedings on the trial which are properly a part of the record, this court will not review alleged errors."

We have not deviated from the principle there announced since. It is true that the certificate of the clerk seems all inclusive. However, the transcript itself discloses the omission of the dissolution proceedings which were made a part of the petition by reference and no doubt entered into the court's decision.

Obviously, the judgment of the trial court in sustaining the demurrer to the petition cannot now be reviewed by this court on a transcript which omits an important exhibit which the trial court had before it and which could very well be conclusive of the issues here involved.

Even if the claim against the defendant is not barred by the dissolution proceedings, we think it barred by the statutes of limitations.

First it appears from the petition that all work was suspended on the well in so far as plaintiff was concerned not

later than 180 days or 6 months after April 18, 1944, or not later than October 18, 1944, on which date plaintiff lost his tools in the well. Plaintiff never did any work after that date.

There is no allegation that he ever completed the well as a producer or plugged it as a dry hole or ever completed his contract. The well turned out to be neither a producer nor a dry hole. As a matter of fact, plaintiff pleads in his petition that a little more than one year after he last did any work on the well, he consented to its being abandoned and plugged by the defendant under the direction of the Corporation Commission.

Plaintiff's contract called for payment only upon completion of the well as a producer or after he plugged it as a dry hole and then only after he had paid all bills for labor and supplies and furnished evidence of their payment to the defendant. Neither condition is here alleged, while, on the contrary, it is admitted that the well was never completed either as a producer or ever plugged by plaintiff as a dry hole and that the last work plaintiff ever did on the well was not later than October 18, 1944.

The petition in this case was not filed until February 16, 1950 or considerably more than five years after plaintiff performed any service in connection with said well.

Title 12, §92, O. S. A., reads as follows:

"Civil actions can only be commenced within the periods prescribed in this article, after the cause of action shall have accrued; but where, in special cases, a different limitation is prescribed by statute, the action shall be governed by such limitation."

Title 12, §95, O. S. A., reads in part as follows:

"Civil actions, other than for recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

"First, within five years: An action upon any contract, agreement, or promise in writing. * * *."

In National Bank of Claremore v. Jefferies, 126 Okla. 283, 259 P. 260; we held:

"The general rule is, the statute of limitations begins to run when the cause of action accrues, and the true test to determine when the cause of action accrues is to ascertain the time when the plaintiff could first maintain his action to a successful result. Broadwell v. Board of Commissioners of Bryan County, 88 Okla. 147, 211 P. 1040. In U. S. Fidelity & Guaranty Co. v. Fidelity Trust Co., 49 Okla. 398, 153 P. 195, this court said:

" 'Whenever one person may sue another, a cause of action has accrued, and the statute begins to run.' "

To the same effect see: Baker v. Little, 198 Okla. 291, 177 P. 2d 1022; Skelly Oil Co. v. Harrell, 192 Okla. 101, 134 P. 2d 136.

If plaintiff ever had cause of action, obviously he had it on October 18, 1944, the day he last worked in the performance of the contract sued on herein. If he had fulfilled his contract at that time he was entitled to his money at that time and could have maintained an action therefor.

It is true that he says he consented that the well be abandoned a little over a year after he lost his tools in it and quit work, and that it be plugged by the defendant under the direction of the Oklahoma Corporation Commission. This is but an admission on his part that he no longer intended to complete the well as a producer or plug it as a dry hole. To this the defendant agreed but apparently made no promise to reimburse plaintiff for the work done prior to abandonment. At least none is alleged. The giving of his consent to the plugging of the well as required by the law and orders of the Corporation Commission would not under any circumstance toll the statute. At most it indicated he did not intend to complete the well as per his contract.

We think the trial court was correct in sustaining the demurrer and the judgment is affirmed.

This court acknowledges the services of Attorneys A. C. Wallace, A. L. Commons, and J. J. Smith, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V. C. J., and DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.