G. Roy BOWMAN and Roy S. Bowman, Plaintiffs in Error,

v.

OKLAHOMA NATURAL GAS COMPANY, a corporation, Servel, Inc., a corporation, and Arkla Air Conditioning Corporation, a corporation, Defendants in Error.

No. 39912.

Supreme Court of Oklahoma.

Sept. 24, 1963.

**442**

Fischl & Culp, F. Lovell McMillin Ardmore, for plaintiffs in error.

Lupardus, Holliman & Huffman, Tulsa, for defendant in error, Oklahoma Natural Gas Co.

R. Rhys Evans, of Otey, Johnson & Evans, Ardmore, A. Ross Jones, New York City, for defendant in error, Servel, Inc.

Dyer & Dyer, Ardmore, for defendant in error, Arkla Air Conditioning Corp.

IRWIN, Justice.

G. R. Bowman and Roy S. Bowman, plaintiffs in error, commenced an action to recover damages for the alleged failure to properly install an air conditioning unit, against Oklahoma Natural Gas Company, hereinafter referred to as Oklahoma Natural; Servel, Inc., referred to as Servel; and Arkla Air Conditioning Corporation, referred to as Arkla.

The trial court sustained the pleas to the jurisdiction as to defendants Servel and Arkla and dismissed the action against them. The demurrer of Oklahoma Natural to plaintiffs' petition, which alleged two causes of action, was sustained on the grounds that the actions were barred by the statute of limitations and on plaintiffs' election to stand on their petition, judgment was rendered in favor of Oklahoma Natural. Plaintiffs have appealed.

We will first consider the trial court's orders sustaining the pleas of Servel and Arkla to the jurisdiction of the trial court and the dismissal of the action against them.

Plaintiffs alleged Servel and Arkla are foreign corporations doing business in Oklahoma without being domesticated and without being licensed or authorized to do business in the State. Summonses were directed to the Secretary of State under Title 18 O.S.1961, § 472, and the returns by the Secretary of State show a copy of each summons was mailed to the secretary of each corporation. Arkla filed a Special Appearance and Denial of Jurisdiction and alleged it is a foreign corporation and was not doing business in Oklahoma at the time the causes of action arose and the causes of action did not arise out of its doing business in Oklahoma. Servel filed a Special Appearance, Plea to Jurisdiction and Motion to Quash, alleging it is a foreign corporation; that it never has done and does not now transact business in Oklahoma and is not and never has been domesticated in Oklahoma and does no business in Oklahoma within the contemplation of the statutes of Oklahoma.

The motions of Servel and Arkla were set for hearing and the trial court, after examining the motions, the affidavits filed by Servel and Arkla in support of their motions, and hearing and considering the evidence, sustained the pleas of Arkla and Servel.

Plaintiffs contend the trial court erred in sustaining the pleas of Arkla and Servel to the jurisdiction of the trial court, while Servel and Arkla contend the question of jurisdiction raised by motions cannot be presented to this Court on appeal by transcript.

The order sustaining Arkla's plea to the jurisdiction contains the following: " * * * and the court having heard the testimony of witnesses and having examined the affidavits and evidence submitted and having the same under advisement, finds * * *." The order sustaining Servel's plea to the jurisdiction states, " * * * at which time the testimony of witnesses was offered in open court and other evidence submitted, and * * * having heard the evidence and being fully advised in the premises * * * finds * * *."

It is apparent that testimony and evidence were submitted to the trial court in support of and in contravention of Arkla's and Servel's pleas to the jurisdiction.

■ In the case of Barker v. Southwest Homes Corporation, 162 Okl. 77, 19 P.2d 141, we held:

"Motions and evidence in a proceeding are not a part of the record, and cannot be brought to this court upon a transcript, unless a bill of exceptions signed by the court and allowing the same is had within the statutory time or some legal order extending such time."

In Scott v. Bailey, 197 Okl. 152, 169 P.2d 208, we held:

" * * * and in the absence of a bill of exception incorporated in the record, or by case-made, the motion and ruling thereon by the court, and the evidence, if any, pertaining thereto, are not a part of the record presentable to the Supreme Court by transcript."

In Denny v. Wright & O'Rourke, 13 Okl. 256, 74 P. 104, we held:

"Evidence is not a part of the record unless made so by case-made or bill of exceptions."

And in Jordan Bus Company v. Wafer, Okl., 278 P.2d 228, we said on page 230:

"Upon the trial the parties introduced evidence in support of and in opposition to the motion to vacate the judgment; therefore, the alleged errors cannot be presented by transcript." (citing cases)

See also Industrial Building & Loan Ass'n v. Cunningham, 183 Okl. 125, 80 P.2d 228; Kelleam v. Kelleam, 198 Okl. 380, 178 P.2d 604; Veverka v. Frank, 41 Okl. 142, 137 P. 682; and Putnam v. Western Bank Supply Co., 38 Okl. 152, 132 P. 483.

■ Inasmuch as the appeal herein is by transcript, and the same does not contain a bill of exceptions, signed by the trial court and allowing the same within the statutory time or some legal order extending such time, we hold the alleged error of the trial court in sustaining the pleas to the jurisdiction as filed by Servel and Arkla are not properly presented and cannot be considered by this Court.

Plaintiffs alleged two causes of action against Oklahoma Natural and the trial court held that both actions were barred by the three year limitations statute. In the first cause, plaintiffs alleged inter alia, that they entered into a contract with Oklahoma Natural for the installation of an air conditioning unit at a cost of $13,000.00; that the installation was completed in the summer of 1952; that said unit did not function properly and was constantly under repair by Oklahoma Natural; that in the summer of 1955 the unit failed completely; that in November, 1955, Oklahoma Natural advised plaintiffs if they would modify the unit according to plans and specifications which it would furnish, that Oklahoma Natural guaranteed that if such modification work was done under its supervision, the unit would thereafter work reasonably trouble free and that plaintiffs agreed to this modification; that the modification work was done and the unit functioned reasonably trouble free until 1956; that it failed to function properly during 1956, 1957 and 1958, during which time Oklahoma Natural tried numerous times to make said unit function properly; that in the summer of 1959 it did not function properly and Oklahoma Natural worked on the unit for two weeks; that it was necessary to replace the unit with a dif-

ferent unit at a cost of $14,000:00; that between 1953 and 1959, plaintiffs paid $8,035.74 for repairs and servicing of the unit; that said expenditures were made necessary because the unit failed to function properly and failed to deliver the air conditioning which Oklahoma Natural continually represented to the plaintiffs it would deliver for their use. Plaintiffs prayed for damage in the sum of $13,000.00 for the initial cost of the unit and $8,035.74 for repairs and services in their first cause of action.

Plaintiffs' action was filed on May 3, 1960, and the trial court found that the main breach occurred almost immediately after the unit was installed and any cause of action thereon was barred by the three year limitation and that the breach which occurred after the 1955 agreement and modification is barred by the three year limitations.

Plaintiffs cite Wallace v. Williams, Okl., 313 P.2d 784, wherein we held:

"As against a demurrer, a petition must be liberally construed, and all its allegations of fact must be taken as true, together with all reasonable inferences therefrom. If any fact stated therein entitled the plaintiff to any relief, the demurrer should be overruled."

and states that the facts alleged, together with all reasonable inferences therefrom, show that they relied upon the acts, promises and guarantees of the defendants and were thereby induced to let the limitation period go by and that Oklahoma Natural should be estopped from pleading limitations because of its representations and conduct which lulled plaintiffs into a false sense of security in believing that Oklahoma Natural in good faith, planned to adjust their claim, and that such inducement on the part of Oklahoma Natural makes it iniquitous to permit the statute to be pleaded as a defense.

Oklahoma Natural contends the statute of limitations begins to run when a cause of action accrues; and that the true test to determine when the cause of action accrues is to ascertain a time when plaintiff could first maintain his action to a successful result and cites Turner v. Sooner Oil & Gas Co., 206 Okl. 344, 243 P.2d 701, and other cases.

Since the trial court found that plaintiffs' first cause of action was barred by the statute of limitations, we find it appropriate to consider cases wherein vendors of articles have attempted to remedy the defects in the articles sold and then rely on the statute of limitations in defense of actions for breach of warranty. Although we find no Oklahoma cases directly in point we do find cases from other jurisdictions which are persuasive. In Heath v. Moncrief Furnace Company, 200 N.C. 377, 156 S.E. 920, 75 A.L.R. 1082, it was held a cause of action accrues on a breach of warranty of a heating plant, so as to set the statute of limitations to running, not at the date of the warranty, but at the date at which, after attempts to remedy the defects, it was finally determined that the plant would not satisfy the terms of the warranty. In that case it was stated that during the time the attempts to remedy the defects were made "plaintiff was patiently relying upon the repeated assurance of defendant that it would make the plant comply with the warranty".

The Heath v. Moncrief case, supra, was discussed in Gaffney v. Unit Crane and Shovel Corporation, A Corporation, 117 A. 2d 237, wherein the Superior Court of Delaware held that the statute of limitations on causes of action for breach of warranty was not tolled when representatives of the manufacturer examined a truck crane and attempted to repair it, but made no admissions that the warranty had been broken, nor gave any assurance that the truck crane would be made to conform with the warranty.

The Heath case was also discussed in Smith v. American Flange and Manufacturing Co., Inc., D.C., 139 F.Supp. 917, wherein it was held that a breach of implied warranty was not extended by efforts of purchaser's vendor to correct the defective condition, and where purchaser knew

their frozen food lockers were not functioning in accordance with the implied warranties. The court pointed out that in the Heath case the defendant had made repeated assurances to plaintiff that it would make the plant comply with the warranty during the time the corrective attempts were being made and that such "expressly ratified the original warranty."

In 75 A.L.R. page 1087, it is stated, "according to the weight of authority it seems that the statute of limitations is tolled so long as the vender insists that the defects in the article sold can be repaired and is attempting to do so. In Aced v. Hobbs-Sesack Plumbing Co., 55 Cal.2d 573, 12 Cal. Rptr. 257, 360 P.2d 897, it is said that, "The statute of limitations is tolled where one who has breached a warranty claims that the defect can be repaired and attempts to make repairs". The State of Texas seems to follow the view that a cause of action for breach of warranty on sale of a chattel arises at the time of the breach (or at least at the time of the discovery thereof), and the running of the statute is not affected by subsequent assurances of the seller or his attempts to remedy the defects. See 75 A.L.R., pages 1087 and 1088, and the cases cited.

■ We can only conclude that a cause of action for breach of warranty on sale of a chattel arises when the purchaser could first maintain his action to a successful result and the statute of limitations begins to run at that time and attempts by the seller to remedy the defects which give rise to the cause of action do not toll the statute of limitations unless the seller at the time of attempting to remedy the defects, represents that such remedial repairs will make the chattel comply with the warranty.

In support of their theory that Oklahoma Natural should be estopped from pleading the statute of limitations, plaintiffs cite National Zinc Company, Inc., v. Crow, 187 Okl. 513, 103 P.2d 560, wherein we held that where a defendant persuaded plaintiff, instead of filing suit, to enter into a series of joint experiments to determine the cause of

injury to plaintiff's colts, and an implied agreement existed to pay for loss if the experiments indicated liability, and in reliance thereon plaintiff furnished colts for experimentation, and expended money, time, and effort in cooperating with defendant in said experiments, which continued at defendant's request, circumstances were sufficient to estop defendant from relying on the statute of limitations.

The evidence in the above case discloses plaintiff " * * * threatened to file an action for recovery of damages. The defendant persuaded plaintiff to enter into a series of joint experiments, instead of filing an action, * * *". We found that "There can be no doubt that plaintiff was influenced to forego the filing of a suit, on the strength of defendant's inducing him to continue the experiments".

■ Plaintiffs cite Douglass v. Douglass, 199 Okl. 519, 188 P.2d 221. This case involves a confidential relationship existing between a father and son and a promise to make a note and mortgage and we said:

"* * * In order to estop a person from pleading the statute of limitations it is not necessary for such person to agree not to urge it, but it is sufficient if his conduct or promises are such as are naturally calculated to and do 'induce plaintiff into a belief that his claim would be adjusted if he did not sue.'"

In the above case it was alleged that "* * * the plaintiff asked his son to execute the note and mortgage and the son promised to do so, and, being his son, plaintiff relied upon his promises and was thereby induced to delay the bringing of a suit; * * *."

Plaintiffs also cite Depuy v. Selby, 76 Okl. 307, 185 P. 107, which involved an action in damages for breach of a covenant of warranty in a deed. In that case the defendant grantor requested the plaintiff grantee to remain in possession of the property and to make a deferred payment on the purchase price and he assured plaintiff grantee that he had good title and that

he would back the same, and requested plaintiff grantee to further wait and not to sue.

We will now consider plaintiffs' petition in conjunction with the rules of law above set forth. In so doing, the petition must be liberally construed, and all allegations of fact must be taken as true, together with all reasonable inferences therefrom, and if any fact stated thereon entitles plaintiffs to any relief, we must hold the trial court erred in sustaining the demurrer of Oklahoma Natural to plaintiffs' first cause of action.

█ Plaintiffs' petition in the instant action is rather long and the trial court found it "to be well drawn". An examination of the petition conclusively shows, however, that whatever rights, if any, plaintiffs may have had for breach of the original installation contract, plaintiffs waived such rights by agreeing to the modification of the unit in 1955. By the same token, whatever defense, if any, Oklahoma Natural may have had against an action for breach of warranty in performing the original installation contract, was also waived by agreeing to the modification of the unit in 1955. Therefore, any action that plaintiffs might have must be grounded upon the 1955 agreement between the parties to "modify the unit according to plans and specifications".

█ Plaintiffs alleged that Oklahoma Natural guaranteed that if the modification work was done, "that the unit would thereafter work reasonably trouble free"; that after the modification of the unit, it failed to function properly and such failure continued through 1956, 1957, and 1958, notwithstanding the fact that Oklahoma Natural tried numerous times during said years to make the unit function properly, and supplying labor and material for such purpose; that in 1959, Oklahoma Natural worked on the unit for a period of two weeks attempting to make the unit function properly.

Plaintiffs also alleged that from 1953 to and including 1959, they paid out $8,035.74 for repairs and servicing of the unit, and that all the expenditures were made with the knowledge and approval of Oklahoma Natural and many of such expenditures were made upon the recommendations that if such expenditures were made, said unit would function properly; that said expenditures were made necessary because the unit failed to function properly.

It is to be noted that plaintiffs failed to allege that Oklahoma Natural, at any time after the modification agreement was made in 1955, represented to plaintiffs that any remedial work performed by it on the unit would make the unit function properly; that plaintiffs ever suggested to Oklahoma Natural that an action would be filed if the defects were not remedied or that Oklahoma Natural suggested to plaintiffs that they forego the filing of an action in order that attempts to remedy the defects could be made; that plaintiffs relied on Oklahoma Natural's representations and conduct in failing to file the action after it was apparent that the unit was not functioning properly.

It is to be also noted that plaintiffs did not allege that if they would make the expenditures as recommended by Oklahoma Natural that in the event that such expenditures did not remedy the defects that Oklahoma Natural would reimburse plaintiffs for the amount expended or any part thereof. Instead of sustaining plaintiffs' contention that Oklahoma Natural lulled them into a false sense of security, the allegations that plaintiffs expended $8,035.74 for repairs and services between 1953 and 1959, militate against the contentions of the plaintiffs.

We can only conclude that Oklahoma Natural's representations and conduct, as pleaded by plaintiffs, together with all reasonable inferences therefrom, did not toll the statute of limitations. We further conclude that Oklahoma Natural's representations and conduct did not lull plaintiffs in a false sense of security which would make it iniquitous to permit the statute of limitations to be a defense in favor of Oklahoma Natural to plaintiffs' first cause of action. We therefore affirm the trial court's

order sustaining Oklahoma Natural's demurrer to plaintiffs' first cause of action and rendering judgment in favor of Oklahoma Natural.

In the second cause of action, a different situation exists. In this action, plaintiffs seek damages in the sum of $100.00 a month for an average of six months a year for the years 1951 to 1958 inclusive, which they allege were expended for excessive amount of gas, water and electricity to operate the unit installed. In their petition, plaintiffs alleged that Oklahoma Natural represented that if they would install the unit that the same could be operated for at least $50.00 a month cheaper than any mechanical unit; that this was one of the inducements and representations relied upon; that the same representations were made at the 1955 conference in an effort to get plaintiff to agree to the modification changes; that instead of operating at a less cost, the operation cost the plaintiffs $100.00 more a month to operate than a similar mechanical unit.

Plaintiffs contend that such representations are continuing, with a new and separate cause of action accruing each and every month in which the actual costs of operation exceeded that represented by Oklahoma Natural; that if Oklahoma Natural is not estopped to plead the statute of limitations that they would be entitled to recover damages occurring within three years next preceding the filing of this action on May 3, 1960; that since the unit was removed in 1959, Plaintiffs' recovery would be limited to damages occurring during the period from May 3, 1957, to the time the unit was removed.

Oklahoma Natural takes the position that plaintiffs' second cause of action is barred by limitations, and if not barred, it does not involve any agreed fixed contractual amounts but are entirely speculative in their nature and plaintiffs are not entitled to any recovery.

■ In 54 C.J.S. Limitations of Actions § 151, page 94, it is stated:

"The right of action for breach of a continuing covenant accrues from day to day as long as the breach continues, and any claim for a breach back of the statutory period within which action may be brought is barred, but the fact that a portion of the claim is barred by the statute of limitations will not prevent a recovery for the part which has not become barred by the time suit is filed."

In Indian Territory Illuminating Oil Co., v. Rosamond, 190 Okl. 46, 120 P.2d 349, 138 A.L.R. 246, we held:

"The right of action for breach of a continuing covenant accrues from day to day as long as the breach continues."

See also, 34 Am.Jur., Limitation of Actions, Sec. 137, at page 111.

■ In the instant action we are not concerned with the length of time that Oklahoma Natural was allegedly obligated on its representations that the unit could be operated for at least $50.00 a month cheaper than any mechanical unit, but whether the statute of limitations preclude plaintiffs from recovering under their allegations. They specifically alleged the necessary allegations to constitute a continuing covenant that the unit could be operated for at least $50.00 a month cheaper than any mechanical unit.

■ Although the amount that plaintiffs may be entitled to recover must of necessity be determined by the triers of fact, the allegations as to the damages plaintiffs are entitled to recover, are not so speculative (see Indian Territory Illuminating Co. v. Rosamond, supra.) as to warrant the sustaining of a demurrer to plaintiffs' second cause of action and we hold the trial court erred in sustaining a demurrer to plaintiffs' second cause of action and rendering judgment in favor of Oklahoma Natural.

The orders of the trial court sustaining the pleas to the jurisdiction of Servel and Arkla and dismissing the action against them are affirmed; the order of the trial court sustaining the demurrer of Oklahoma Natural to the first cause of action and ren-

dering judgment for Oklahoma Natural **is** affirmed; the order of the trial court sustaining the demurrer of Oklahoma Natural to plaintiffs' second cause of action and rendering judgment for Oklahoma Natural is reversed with directions to vacate the judgment in favor of Oklahoma Natural and its order sustaining the demurrer to the petition of plaintiffs; reinstate the petition as to the second cause of action against Oklahoma Natural and take such further action as may be indicated.

Affirmed in part, reversed in part.

HALLEY, V. C. J., and WELCH, DAVISON, JOHNSON, WILLIAMS and JACKSON, JJ., concur.

BLACKBIRD, C. J., and BERRY, J., concur in part, dissent in part.