In re DYNACO CORPORATION, Dynaco West Corporation, Debtors.

DYNACO CORPORATION, Plaintiff,

v.

KLA INSTRUMENTS CORPORATION, Defendant.

Bankruptcy Nos. 93–12141 JEY,
No. 93–12142 JEY.
Adv. No. 95–1025 JEY.

United States Bankruptcy Court,
D. New Hampshire.

Aug. 30, 1996.

Robert E. Murphy, Wadleigh Law Office, Manchester, NH, for Plaintiff.

Richard L. Levine, Hill & Barlow, Boston, MA, for Defendant.

Geraldine Karonis, Asst. U.S. Trustee, Manchester, NH.

*MEMORANDUM OPINION*

JAMES E. YACOS, Chief Judge.

This adversary proceeding presents as a key issue whether the statute of limitations pertaining to a sale of goods is tolled by a seller's assurances that it can make its delivered product perform. This matter came before the Court on a "Motion to Dismiss

Pursuant to Federal Rule 12(b)(6)" filed by the defendant (Court Doc. No. 19) with regard to the "First Amended Complaint for Damages for Negligent Misrepresentation and Breach of Contract" filed by the plaintiff (Court Doc. No. 18).

The Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

The adversary proceeding involves claims relating to a computerized machine which was purchased by the plaintiff and delivered by the defendant on March 30, 1989. The Motion to Dismiss is based upon the contention that both the three-year statute of limitations applicable to a cause of action for tortious misrepresentation pursuant to NH RSA 508:4, and the four-year statute of limitations pertaining to a cause of action for breach of contract pursuant to NH RSA 382–A:2–725, ran from March 30, 1989, and therefore expired before the filing of this bankruptcy case on July 23, 1993. The movant therefore contends that the causes of action at issue in this adversary proceeding were not saved by § 108 of the Bankruptcy Code, which would have extended the time for filing a viable preexisting cause of action for two years following the bankruptcy filing. 11 U.S.C. § 108(a)(2). The original complaint in this adversary proceeding was filed on February 23, 1995.

▆ In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b), it is fundamental that the Court "must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action

in accordance with the law, [it] must deny the motion to dismiss." *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir.1994).

## PLEADINGS

The pertinent allegations of the Amended Complaint, to be taken at their strongest in favor of the plaintiff, can be summarized as follows.

1. The KLA Model 3000 AOI System which is the subject of the litigation was acquired and delivered on March 30, 1989 as a result of a purchase order dated March 30, 1989 and a financing lease signed on April 11, 1989.[1] (Amended Complaint, ¶ 6).

2. The plaintiff purchased the machine from the defendant for $241,000 "for the purpose of utilizing same in DYNACO's business of producing high technology printed circuit boards." (Amended Complaint, ¶ 6).

3. The defendant represented "that the machine would read various levels of printed circuit board when in fact it would not, failed to disclose environmental requirements for air conditioning that made the room uninhabitable for operators for any length of time, and failed to disclose a level of cleaning and storage of circuits [sic] boards that made use of the machine in the ordinary course impossible without additional cleaning and inspection procedures that destroyed any economies from operating the machine." (Amended Complaint, ¶ 7).

4. From March 30, 1989 through October of 1989 the defendant "attempted to install and configure the machine in accordance with its represented functionality" and particularly with regard to "the positioning of circuit boards on the platen so that the machine could read the ciruits [sic] to the represented degree of accuracy" which the defendant had represented

---

1. These documents are referenced as being attached to the Complaint but are not actually attached to the original Complaint in the Court file. They do appear as attachments to Court Doc. No. 12 which is an Affidavit that is not otherwise before this Court because the matter is not presented for summary judgment but simply

on a motion to dismiss for failure to state a claim. See *Transcript*, pp. 15, 31–32, 51–53, 67, 71, 77 (August 14, 1995). For present purposes, these attachments (only) to Court Doc. No. 12 are incorporated by reference as though they were attached to the Complaint.

pursuant to the contract was "5 mills of accuracy" but that "the machine as delivered was incapable of reading beyond 3½ to 4 mills". (Amended Complaint, ¶ 9).

5. The machine never did perform in the manner represented by the defendant although the defendant "twice upgraded the software during the first year of operation, to no avail. KLA's representations of working on advancxes [sic] that would address the reflectivity problem ceased by April of 1990," and the machine was never able to read the layers of circuits it was represented to be capable of. (Amended Complaint, ¶ 10).

6. "By October, 1990, DYNACO had determined that KLA's representations of ability to cure the defective performance of the MACHINE could not be rendered true by any further modification or service by KLA, abandoned further attempts to use the machine for its represented purpose, and attempted to rescind for noncomformance, but KLA rejected the rescission. KLA's assignee of the financing lease refused to grant consideration for nonconformance because the financing lease expressly made recourse an issue between the vendor and the purchaser." (Amended Complaint, ¶ 12).

7. The representations on March 30, 1989 that the machine was fit for the purpose of which it was purchased "were in fact false.... the MACHINE was essentially useless in all respects...., [and] [w]hen KLA made the representations alleged ... KLA knew or should have known them to be false...." (Amended Complaint, ¶¶ 15, 16).

8. "DYNACO, at the time these representations were made by defendant, and at the time DYNACO took the actions alleged hereinabove, was ignorant of the falsity of defendant's representations, and believed them to be true. In reliance on said representations, DYNACO was induced to and did enter into the above alleged AGREEMENTS. Had DYNACO known the actual facts, it would not have taken such ac-

tion. DYNACO's reliance on defendant's representations was justified, on the basis of defendant's superior knowledge regarding the subject of the transaction." (Amended Complaint, ¶ 17).

9. "KLA concealed the falsity of these representations by repeated assurance that the MACHINE coould [sic] be made to conform to the representations through service and software upgrades. Although DYNACO relied upon these representations and afforded KLA opportunity to make the MACHINE conform, DYNACO concluded that the MACHINE could not be made conforming in October, 1990. KLA continued to misrepresent its ability to fix the MACHINE, but software upgrades in late 1991 [sic][2] did not enable the MACHINE to perform." (Amended Complaint, ¶ 18).

Based on these allegations, the plaintiff in its first cause of action for misrepresentation concludes that as a foreseeable and proximate result of the wrongful acts alleged it suffered various damages for which it claims recovery in tort. The plaintiff in its second cause of action for breach of contract adds allegations that the agreement between the parties "included a continuing warranty that the MACHINE was free from 'defect in design, workmanship and materials, conform[s] strictly to applicable specifications, drawings, ... [was] fit and sufficient for the purposes intended; and to be merchantable....'" (Amended Complaint, ¶ 23, quoting Purchase Order, ¶ 9). "The AGREEMENT further required KLA to correct or replace the MACHINE, at DYNACO's option." (Amended Complaint, ¶ 23). The plaintiff also alleges that the defendant "breached its agreement to correct or replace the machine in October 1990." (Amended Complaint, ¶ 24).

## DISCUSSION

The defendant argues strenuously that it is uncontroverted on these allegations that the machine did not perform when it was delivered in March of 1989 and that therefore the applicable statutes of limitations began to

---

**2.** The plaintiff acknowledged at oral argument that this date as plead was contradictory and erroneous.

run from that date as to both causes of action alleged.

### The Tort Cause of Action

■ With regard to the cause of action for tortious misrepresentation, the defendant recognizes that New Hampshire law would apply a tolling factor to the statute of limitations until the fact of misrepresentation was discovered or in the exercise of reasonable care, should have been discovered. See *Shillady v. Elliot Community Hospital*, 114 N.H. 321, 320 A.2d 637 (1974); *Town of Hooksett School Dist. v. W.R. Grace and Co.*, 617 F.Supp. 126, 129 (D.N.H.1984). The defendant maintains, however, that on the face of the Amended Complaint the discovery had to occur at the time of the original representations at the time of the delivery of the machine, because the machine demonstrably did not work when delivered.

■ I conclude that the defendant is correct on this assertion inasmuch as the plaintiff's own allegations indicate that it had to know that the representations were not accurate and could not be relied upon per se at the moment that the machine was delivered and would not perform its intended function. To the extent that the plaintiff relied on the defendant's post-delivery activities with regard to the machine, and its further representations in that regard, that consideration would only be relevant to the second cause of action for breach of contract, if at all, but would not justify tolling the cause of action for negligent misrepresentation.[3]

■ Finally, while not briefed or raised by the parties themselves, the Court in undertaking its research regarding this case has discovered that the New Hampshire courts would not find actionable a separate tort cause of action by a buyer of goods having a contractual warranty cause of action under Article 2 of the Uniform Commercial Code (enacted in New Hampshire as NH RSA 382–A:2–101 et. seq.) where the buyer can only allege an "economic loss" and not an injury to person or an injury to property other than the item that was purchased. See *Public Service Co. of New Hampshire v. Westinghouse Elec. Corp.*, 685 F.Supp. 1281, 1284–1287 (D.N.H.1988) ("In light of the above-discussed cases, this Court is of the view that the New Hampshire Supreme Court would, if faced with the issue, deny tort liability for purely economic loss."). Accord *Canal Electric Company v. Westinghouse Electric Corporation*, 756 F.Supp. 620, 629–631 (D.Mass.1990) ("It is the general rule in the United States that a plaintiff cannot recover for purely economic injury under a tort-based cause of action."), citing *Public Service Company of New Hampshire v. Westinghouse Electric Corp.*, *supra* and *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).[4] The present Amended Complaint does not allege any such personal injury or injury to other property within the meaning of the exceptions to the "economic loss" exclusion doctrine as applied in New Hampshire or other jurisdictions applying the doctrine. See Annot., *Strict Products Liability: Recovery for Damage to*

---

**3.** It should also be noted that while the First Amended Complaint refers to "negligent misrepresentation" in its initial caption, the first cause of action as specifically alleged in the body of the Amended Complaint does not allege negligence at all, in the sense of a duty of care and a breach thereof, but rather alleges misrepresentation which the defendant "knew or should have known" to be false. This, as a matter of law, constitutes an allegation of fraudulent misrepresentation and not negligent misrepresentation. See *Hydraform Products Corp. v. American Steel & Aluminum Corp.*, 127 N.H. 187, 498 A.2d 339 (1985) (specifying elements of tort for negligent misrepresentation). The plaintiff earlier in this case withdrew a prior cause of action for fraudulent misrepresentation and arguably in any event should not be allowed to resurrect that cause of

action, without leave of court, under the guise of the word "negligent" appearing only in the caption of the Amended Complaint. *In re Dynaco Corp.*, Bk. No. 93–12141, *Dynaco Corp. v. KLA Instruments, Corp.*, Adv. No. 95–1025, *Order on Motion to Dismiss*, slip op. (May 16, 1995) (Court Doc. No. 13) (plaintiff withdrew Count I of Complaint (Action for Fraud and Deceit) in open court).

**4.** The District Court decision in *Canal Electric* was reversed on other grounds, 973 F.2d 988 (1st Cir.1992). The Court of Appeals in fact affirmed the "economic harm" ruling of the lower court and spelled out "the policy reasons that underlie" that limitation on tort recovery. 973 F.2d at 998.

*Product Alone,* 72 ALR 4th 12, 24; 1 J. White & R. Summers, *Uniform Commercial Code,* § 10–5 at 580–583 (4th ed. 1995). Accordingly, even if this Court were to determine the tort cause of action was timely filed, notwithstanding the statute of limitation objection by the defendant, the Court would nevertheless grant the motion to dismiss based upon the "economic loss" exclusion doctrine.[5]

### The Contract Cause of Action

■ With regard to the second cause of action involved, the breach of contract action, a number of issues regarding the statute of limitations defense were raised. The plaintiff during the oral argument on this motion contended that the four-year statute of limitations set forth in NH RSA 382–A:2–725 [6] would not apply because of the *additional* contractual provision obligating the seller to repair or replace the machine if defective. However, in a bench ruling I rejected that contention, *Transcript,* pp. 77–78 (August 14, 1995), on the basis that the additional contractual provision in question did not amount to a warranty of future performance *for a specific time period* and therefore the repair and replacement provision would not take the contract out of the applicable statute of limitations. See, e.g., *Ontario Hydro v. Zallea Sys., Inc.,* 569 F.Supp. 1261, 1266 (D.Del. 1983) (repair or replacement warranty provides remedy for defective product whereas future performance warranty guarantees performance of product for specified period); *H. Sand & Co., Inc. v. Airtemp Corp.,* 738 F.Supp. 760, 771 (S.D.N.Y.1990). I adhere to that ruling for purposes of this Opinion.

**5.** Because neither party referenced this doctrine as a basis for dismissing the Amended Complaint, the plaintiff shall have 10 days from entry of the accompanying Order to this Memorandum Opinion within which to seek reconsideration as it may be advised with regard to the Court's application of that doctrine as an additional ground for dismissal of the tort cause of action.

**6.** Section 2–725 provides in part:
(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

■ I also rendered a bench ruling during the course of this proceeding rejecting the defendant's contention that N.H. RSA 382–A:2–725(4) precluded New Hampshire courts from creating or considering any tolling of this statute of limitation provision in appropriate equitable circumstances. *Transcript,* pp. 24–29, 49–50 (August 14, 1995). My view is that subsection (4) of N.H. RSA 382–A:2–725 [7] may have effect with regard to *other* statutes of limitation that arguably could apply to the transaction, and that those other statutes of limitation are not to be considered altered by N.H. RSA 382–A:2–725. That does not mean that the New Hampshire courts themselves were precluded by the legislature from applying concepts of equitable tolling with regard to section 2–725 itself. I also adhere to that ruling for the purposes of this Opinion.

### (Equitable Tolling)

■ The plaintiff's key contention is that the four-year statute of limitations applicable to its breach of contract action should be deemed tolled under equitable principles until at least April 1, 1990, when the defendant ceased any further efforts to modify the software component of the machine to allow it to perform according to the contract. The plaintiff contends that it was entitled to rely upon the defendant's continuing assurances that its modifications of the software would result in a performing machine conforming to the contract and therefore the statute should be deemed to be equitably tolled until that point. Accordingly, the plaintiff concludes that the four-year statute of limitations

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods* and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. NH RSA 382–A:2–725 (emphasis supplied).

**7.** Subsection (4) provides, "This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this chapter becomes effective." NH RSA 382–A:2–725(4).

would not expire until April 1, 1994 and thus the cause of action was still viable when the bankruptcy case was filed on July 23, 1993.

The defendant responds that the cases almost universally reject the contention that equitable tolling occurs simply because of attempts to repair and assurances of performance. See, e.g., *Pako Corp. v. Thomas*, 855 S.W.2d 215, 219 (Tex.App.1993); *Harford Mut. Ins. Co. v. Seibels, Bruce & Co.*, 579 F.Supp. 135, 138 (D.Md.1984); *Centennial Insurance Co. v. General Electric Co.*, 74 Mich.App. 169, 253 N.W.2d 696 (1977); and *New England Power Co. v. Riley Stoker Corp.*, 20 Mass.App.Ct. 25, 477 N.E.2d 1054, 1058 (1985) (neither unsuccessful attempts to repair a product nor the seller's assurances of the success of repair efforts tolls the statute of limitations). The defendant argues that while the New Hampshire courts have not yet spoken specifically to the issue in the "attempts to repair" context, this Court should conclude that the New Hampshire courts would follow the majority of decisions in that regard in view of the strict approach the New Hampshire courts have taken in an analogous area of the law, i.e., as to whether a "discovery rule" should be applied to sale-of-goods transactions. The New Hampshire courts have refused to apply that rule in warranty breach actions. See, e.g., *Thomas v. King Ridge, Inc.*, 771 F.Supp. 478, 482 (D.N.H.1991), citing *French v. R.S. Audley, Inc.*, 123 N.H. 476, 479, 464 A.2d 279 (1983) (discovery rule cannot toll statute of limitations in warranty claims because it has not been extended to contract actions in New Hampshire); *Wentworth v. Kawasaki, Inc.*, 508 F.Supp. 1114, 1116 (D.N.H.1981); and *Raymond v. Eli Lilly & Co.*, 412 F.Supp. 1392, 1403 (D.N.H.1976) (limitations period in warranty actions begins to run upon tender of delivery, even if buyer is unaware of defect).

The plaintiff argues that this Court should adopt the minority position, regarding equitable tolling by attempts to repair, and cites several decisions in support. See *AgriStor Leasing v. Kramer*, 640 F.Supp. 187 (D.Minn.1986), *Southern California Enterprises, Inc. v. D.N. & E. Walter & Co.*, 78 Cal.App.2d 750, 178 P.2d 785 (1947), *Bow-*

*man v. Oklahoma Natural Gas Co.*, 385 P.2d 440 (Okla.1963), *Gaffney v. Unit Crane & Shovel Corp.*, 49 Del. 381, 117 A.2d 237 (1955), and *Louisville Silo & Tank Co. v. Thweatt*, 174 Ark. 437, 295 S.W. 710 (1927). The cases cited by the plaintiff however are few in number, not persuasive in their reasoning, and except for one are distinguishable from the case at bar.

In *AgriStor Leasing v. Kramer*, 640 F.Supp. 187 (D.Minn.1986), the court found that the buyers were unable to produce *any* evidence of fraudulent representations or repair promises by either the manufacturer or the seller of the defective product that would suffice to form a basis for estoppel or tolling of the statute of limitations. *AgriStor* at 190. Consequently, the *AgriStor* court of necessity did not consider what circumstances, if any, might justify estoppel or tolling of the time period. The *AgriStor* court referenced *Bethesda Lutheran Church v. Twin City Construction Co.*, 356 N.W.2d 344 (Minn. App.1984), *review denied* (1985), in which the court held that a general contractor, who had made numerous promises and attempts to repair the building owner's roof over the applicable six-year period of the statute of limitations, and who had immediately ceased all attempts to repair the roof after the limitations period had passed, was estopped from asserting the statute of limitations as a defense to the owner's subsequent lawsuit. The general contractor also gave the building owner, as part of its many promises to repair the roof, a two-year warranty shortly after the leakage problem began. *Id.* at 350. In the present case, however, unlike the situation in *Bethesda*, the plaintiff still had two or more years in which to sue the defendant after the defendant admitted that it could make no further repairs on the product. The *AgriStor* court itself noted that the *Bethesda* case is distinguishable on its facts. *AgriStor* at 190.

In *Southern California Enterprises, Inc. v. D.N. & E. Walter & Co.*, 78 Cal.App.2d 750, 178 P.2d 785 (1947), *hearing denied* (May 22, 1947), the owner of a ballroom contracted for a carpet to be made and installed, and the parties' agreement specifically provided that the carpet would "last for a period of six to

eight years following its installation". *Id.* 178 P.2d at 787. The carpet became frayed and began to unravel within two years, and the buyer sued the manufacturer approximately seven months after the two-year statute of limitations period had passed. The court determined that, "The cause of action is on a warranty of a future happening and it did not arise and the statute of limitations did not begin to run at the date of sale but was postponed until the future event failed to materialize." *Id.* at 787. Unlike the *Southern California Enterprises* case, the case at bar does not involve a warranty of a future happening that is based on specific terms of the agreement.

In *Gaffney v. Unit Crane & Shovel Corp.*, 49 Del. 381, 117 A.2d 237 (1955), the plaintiffs had purchased a truck crane with a warranty that the crane could lift twenty tons, and a year and a half later the plaintiffs learned that it would not lift that amount of weight. The plaintiffs brought suit almost two years later, approximately five months after the limitations period had passed. The Court declined to extend any equitable estoppel to the tolling of the statute of limitations, because "[t]here was nothing to prevent the plaintiffs from testing the capacity of the truck crane at the time it was purchased or any time thereafter." *Id.* 117 A.2d at 239. The court further stated, in response to the plaintiffs' claim that the defendant "tolled the statute when its representative examined the truck crane . . . and attempted to repair it so that it would have the capacity to lift the required weight", that "[t]here was no admission by the defendant . . . that the warranty had been broken or any assurance that the truck crane would be made to conform to the warranty." *Id.*

Presumably, based upon this last quoted remark, the plaintiff herein cites the *Gaffney* case for the proposition that where the seller acknowledges that its product does not perform as warranted, and where the seller attempts to repair the product so that it does so perform, then the statute begins to run from the time the product was supposed to perform. That, however, was not the holding in *Gaffney*, it was merely dicta, and the court's hesitance to apply equitable estoppel

where the plaintiffs could have determined the truck crane's deficiency in a timely fashion is even more applicable here, where the plaintiff knew the product would not function properly from the time of delivery.

The *Bowman v. Oklahoma Natural Gas Co.* case involved an air conditioning unit that the installer represented could be run for at least $50 less per month than any other unit, but that instead cost about $100 more per month to run. The Oklahoma Supreme Court reversed the lower court in part, based on its holding that the installer's agreement to modify the unit constituted a continuing covenant, for which an action for breach of same "accrues from day to day as long as the breach continues. . . ." *Bowman v. Oklahoma Natural Gas Co.*, 385 P.2d 440, 447 (Okla.1963) (citation omitted). Importantly, however, the *Bowman* court specifically held that the installer's representations that he could make the air conditioning unit work more efficiently did not toll the three-year statute of limitations for breach of warranty actions. *Id.* at 446.

The decision in *Louisville Silo & Tank Co. v. Thweatt*, 174 Ark. 437, 295 S.W. 710 (1927), does stand for the proposition asserted by the plaintiff in the present case. That Court ruled: "We hold, therefore, that while the statute of limitations ordinarily begins to run against an action for breach of warranty upon the sale and delivery of a chattel which does not comply with warranty, yet the statute is tolled so long as the vendor insists that the defect can be repaired and is attempting to do so." *Id.* 295 S.W. at 712. This decision predated of course the enactment of the Uniform Commercial Code, commencing in the nation in 1953 in Pennsylvania, with its emphasis upon more precise and understandable rules for parties engaged in commercial transactions. It has been noted that the U.C.C.'s clear and strict limits on warranty liability to sellers regarding defective products is based upon the rationale that such clear and strict rules will lower the costs of goods being sold generally to the benefit of all notwithstanding some injustice in particular transactions caused by such strict rules. *Public Service Company of New Hampshire v. Westinghouse Electric Corp., supra,* 685

F.Supp. at 1286, citing *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872–874, 106 S.Ct. 2295, 2302–2304, 90 L.Ed.2d 865 (1986). In that context, the *Louisville Silo* case is not a persuasive precedent in my judgment regarding the appropriate interpretation of Article 2–275 of the Uniform Commercial Code as enacted in New Hampshire.[8]

It is true, as the defendant itself concedes, that equitable tolling would occur had the defendant continued to represent that it would make the machine perform appropriately in the context of an impending deadline under a statute of limitations in which the buyer was importuned not to sue and relied upon such representations. See, e.g., *Bethesda Lutheran Church v. Twin City Construction Co.*, 356 N.W.2d 344 (Minn.App.1984); *Barton Press, Inc. v. American Environmental International, Inc.*, 1995 WL 46353, *3–*4 (D.N.J.1995). However, there is no such assertion in plaintiff's Amended Complaint and in fact it is uncontroverted that the plaintiff had three years from April 1990 (and even two-and-a-half years from October 1990) within which to commence litigation after it knew the machine would not be made to perform appropriately by the defendant.

A very recent case involving a bankruptcy trustee and a § 546(a)(1) statute of limitations defense has specifically addressed the question of whether an initial period of justifiable delay in bringing suit would insulate a plaintiff from the limitations defense where the plaintiff was not diligent thereafter in commencing litigation while time was still available under the statute. The Ninth Circuit Bankruptcy Appellate Panel in *In re Hosseinpour–Esfahani*, 29 BCD 511, 198 B.R. 574 (9th Cir. BAP 1996), held that the trustee was properly barred since tolling itself is an equitable principle that is to be applied according to the particular circumstances of the case. The court stated:

The equitable tolling doctrine is a creation of common law that has been read into every statute of limitations. *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). The Ninth Circuit has held that in certain cases, the doctrine of equitable tolling may be applied to toll the two year statute of limitations contained in § 546(a)(1). *In re United Ins. Management, Inc.*, 14 F.3d 1380, 1384 (9th Cir.1994).

Under the doctrine of equitable tolling, "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Id.* (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991)).

In the instant case, the trustee filed his complaint on May 1, 1995, more than two years after he became the permanent trustee at the conclusion of the § 341 meeting of creditors held on March 25, 1993. The trustee argues, however, that as a matter of law, the two-year time period was equitably tolled because he was diligent in discovering the debtors' alleged fraud and because he filed the complaint within two years after the discovery. In support of his argument, the trustee relies on the seminal case of *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874).

\*     \*     \*     \*     \*     \*

The holding of *Bailey*, and the numerous cases decided in its wake, focused on the diligence of the plaintiff in attempting to learn of the fraud. Courts, including the Ninth Circuit, have subsequently held that when the application of the equitable tolling doctrine turns on the plaintiff's lack of

---

**8.** It may also be noted that the facts in the *Louisville Silo* case involved an unusually compliant buyer who suffered repeated crop losses from using the silo in question from the sale in 1918 until suit was brought in 1925 with the seller repeatedly assuring the buyer each year that notwithstanding the wetness that destroyed his crop that year the silo was again repaired so that it would keep the crop dry the next year. This went on year after year and the buyer kept losing his crop. The unusual gullibility of the farmer involved may have influenced the decision of the court.

diligence in discovering a cause of action, a court may hold as a matter of law that the doctrine does not apply. *United*, 14 F.3d at 1385.

While we do not dispute this rule of law, the case before us does not concern whether or not the trustee was diligent in uncovering the alleged fraud. The issue before the Panel is whether the bankruptcy court abused its discretion in refusing to apply the doctrine of equitable tolling when the trustee was dilatory *after* discovering the existence of a claim.

\* \* \* \* \* \*

Despite the trustee's alleged diligence in discovering the alleged fraud before the statute of limitations lapsed, we cannot conclude that this obviates the need for the trustee to act diligently and in a timely manner once he has this knowledge. See *Scholar* [*v. Pacific Bell*], 963 F.2d [264] at 268 [ (9th Cir.1992) ] (declining to apply the doctrine of equitable tolling when there was sufficient time under the statute to file a complaint, but the plaintiff failed to act). Before a court applies equitable principles to toll a statute, the plaintiff must demonstrate some justification to invoke the doctrine. *Id.* In this case, the trustee has offered no explanation why three months was an insufficient period of time to file a complaint. We suspect such an explanation would be difficult, especially when KB & M had recently represented Meritplan in an adversary proceeding based upon some, if not all, of the same allegedly fraudulent acts.

*Id.* at 512–513, 198 B.R. at 578–79.

■■■■ I conclude that mere promises to repair or replace a machine after delivery, or assurances of performance, do not themselves ipso facto support equitable tolling of the statute of limitation provisions of N.H. RSA 382–A:2–725 and, alternatively, even if equitable tolling were applicable it would be of no avail to the plaintiff on the facts alleged in this case.[9] In my view the New Hampshire courts when presented with these issues would so rule. There is a strong policy of finality in commercial transactions and accordingly buyers who do not bargain for and insist upon a warranty of performance for a specific future time period are relegated to the basic statutory provision for commencing breach of contract actions when they only request and obtain a warranty that the product is fit for its intended purpose.[10]

### (Tender of Delivery)

■■■■ My ruling that the statute is not tolled by the mere fact of attempts to repair or assurances of performance regarding the product delivered does not however finally determine the motion before the Court. It could be argued, even apart from any conception of equitable tolling, that the triggering event of "tender of delivery" did not in this case occur on March 30, 1989 to start the four year statutory period running. While the hardware involved in the machine was obviously physically delivered on March 30, 1989, it could be argued that the delivery of the appropriate software to run the machine was not realistically "delivered" until the defendant installed various versions of the required software, attempting to make the machine perform, and then ceased any further efforts in April of 1990 with the last version of software installed. While the Amended

9. It is beyond argument that the plaintiff's predecessor had more than ample time, i.e., at least two-and-one-half years within which to file suit after the grounds for tolling had terminated. To the extent that some courts refer to a "suspension" of the statute of limitations during the period of tolling, I do not believe that this somewhat metaphysical concept is appropriate nor do I believe that most courts actually apply the equitable tolling doctrine in that fashion, regardless of the language used.

10. It needs to be re-emphasized that subsection (2) of RSA 382–A:2–725 provides that a breach of warranty "occurs when tender of delivery is made" and that this stringent provision itself indicates the strong finality policy embodied in Article 2 of the UCC regarding commercial sale transactions. Unless the warranty involved is within the "future time period" explicit warranty exception, the ordinary warranty of fitness for purpose is *deemed* to have been breached, if at all, at the moment of delivery of the product notwithstanding any lack of knowledge of a defect at that moment and notwithstanding any obvious need to use the product for at least some time following delivery to determine whether in fact it is fit for the purpose intended. In other words, "buyer beware!".

Complaint before the Court is not explicit in that regard it is susceptible to being read to assert such a contention and since it must be construed as strongly as possible for the plaintiff I will consider that contention as well.

The Court touched upon this point during the oral argument and at its conclusion challenged the plaintiff to come up with any case law that might indicate that the law should appropriately modify and adapt its concept of "tender of delivery" with regard to computerized machines that commonly do require some extended period of on-site installation and modification of software components before the machine is fully operational. Courts under this contention arguably should take into account the fact that delivery of the associated software is not complete until such a machine has been made operational on-site. However, neither party has been able to cite to the Court any case law holding or trending in that direction nor has the Court by independent research been able to find that the Courts in any jurisdiction, let alone New Hampshire, might adopt that somewhat novel concept of "delivery" for the purpose of applying the Uniform Commercial Code statute of limitations embodied in N.H. RSA 382–A:2–725.

On reflection, and considering how important it is to commercial practices and parties to have a clear "triggering event" starting the statute of limitations running, as to sales transactions that involve only warranties for fitness of purpose, so that the seller who has not warranted a fixed period of future performance can know when the seller's liabilities thereunder expire, I conclude that N.H. RSA 382–A:2–725 should be construed to mean the physical delivery of the machine in question on the premises of the buyer, with acceptance by the buyer and payment therefor, regardless of any software components that may require further on-site activity by the seller. Any other rule would open up the statute of limitations to uncertainty relating to months and perhaps years of ongoing activity with regard to the software and could in many situations render the statute of limitations provision a nullity. Cf., *New England Power v. Riley Stoker Corp., supra,* 20 Mass.App.Ct. 25, 477 N.E.2d 1054 at 1057–1058 (1985). If a buyer wishes appropriate protection in this regard the buyer can and should negotiate (and pay for) a warranty of future performance for a specific time period. I conclude that the New Hampshire courts would not in my judgment construe the statutory provision in question to include a "tender of delivery" meaning other than that which is commonly and almost universally accepted, i.e., physical delivery to the premises of the buyer.

## CONCLUSION

The foregoing analysis supports a conclusion that the Amended Complaint fails to state a cause of action upon which relief may be granted and therefore is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate Order and Judgment granting the Motion to Dismiss the Amended Complaint with prejudice.