**In re OLYMPIA & YORK MAIDEN LANE COMPANY, LLC and Olympia & York Maiden Lane Finance Corporation, Debtors.**

**Mitchell E. Rudin, in his capacity as receiver of the real property located at 59 Maiden Lane, New York, NY, Plaintiff,**

**v.**

**The Tax Commission of the City of New York, the Department of Finance of the City of New York, and Norman Goodman, in his capacity as Clerk of the County of New York and Clerk of the Supreme Court of the State of New York, New York County, Defendants.**

Bankruptcy Nos. 98–B–46167, 98–B–46168 (JLG).

Adversary No. 98–9384A.

United States Bankruptcy Court, S.D. New York.

May 14, 1999.

Denis F. Cronin, New York City, for plaintiff.

Michael D. Hess, Corporation Counsel of the City of New York, New York City, for defendants.

## MEMORANDUM DECISION ON DEFENDANTS' MOTION TO DISMISS AND MITCHELL E. RUDIN'S CROSS MOTION FOR SUMMARY JUDGMENT ON HIS COMPLIANT SEEKING A MANDATORY INJUNCTION DIRECTING DEFENDANTS TO ACCEPT THE TAX CERTIORARI PETITION OF OLYMPIA & YORK MAIDEN LANE COMPANY LLC AND OLYMPIA & YORK FINANCE CORPORATION *NUNC PRO TUNC* TO OCTOBER 23, 1998

JAMES L. GARRITY, Bankruptcy Judge.

In this adversary proceeding, Mitchell E. Rudin ("Rudin" or "Receiver"), as receiver of certain improved real property located at 59 Maiden Lane, New York, New York (the "Property"), seeks an injunction under Fed.R.Bankr.P. 7001 and § 108(a)(2) of the Bankruptcy Code directing that the Tax Commission of the City of New York ("Tax Commission"), the Department of Finance of the City of New York ("Department of Finance"), and Norman Goodman, in his capacity as Clerk of the County of New York and Clerk of the Supreme Court of the State of New York, New York County ("Norman Goodman," collectively "defendants"), to accept a certain Tax Certiorari Petition (the "Petition") of Olympia & York Maiden Lane Company LLC ("O & Y Maiden Lane") and Olympia & York Finance Corp. ("O & Y Fiance") (collectively the "debtors") commencing an action (a "Tax Action") challenging the tax assessment of the Property under the New York City Charter.

Initially, the Tax Commission and Department of Finance moved to dismiss the Receiver's complaint (the "Complaint") pursuant to Fed.R.Bankr.P. 7012(b)(1) and (b)(6) and Fed.R.Civ.P. 12(b)(1) and (b)(6). Norman Goodman joined in that motion. The Receiver opposed the motion and moved pursuant to Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56 for summary judgment on the Complaint. On the return date of those motions, the parties executed a Statement of Undisputed Facts Pursuant to Local Rule 7056-1 (the "Joint Statement") and agreed to treat the defendants' motion to dismiss as one for summary judgment. Thus, the matters before us are the parties' cross motions for summary judgment. We grant the Receiver's motion and grant him judgment on the Complaint. We deny the defendants' motion.

### Facts

The relevant and material facts are not in dispute and we derive them from documents of record in the debtors' cases and the parties' Joint Statement. On or about August 28, 1998 (the "Filing Date"), the debtors filed separate petitions for relief under chapter 11 of the Bankruptcy Code. On that date, the Property was O & Y Maiden Lane's principal asset, but pursuant to a March 5, 1997 order of the New York State Supreme Court (the "March Order"), Rudin was acting as equity receiver of the Property. By order dated September 4, 1998 (the "September Order"), and pursuant to § 543(d) of the Bankruptcy Code, we authorized Rudin to

continue in possession, custody and control of the Property, in accordance with the March Order, *nunc pro tunc* to the Filing Date.

The Department of Finance is an agency that is authorized to assess for taxation all taxable real property in New York City and prepare the tax assessment role. On May 25, 1998, the Department of Finance caused the Property to be assessed (the "Assessment") by entering it in the books entitled "The Annual Record of Assessed Valuation of Real Estate Indicated by Parcel Numbers in the Borough of Manhattan, The City of New York, July 1, 1998 to June 30, 1999." Subsequent to January 15, 1998, the debtors', claiming to be aggrieved by the Assessment, applied in writing under oath to the Tax Commission to correct the Assessment. On July 1, 1998, the Tax Commission denied that application. On October 27, 1998, the Receiver attempted to commence a Tax Action by filing the Petition with the County Clerk, New York County, but the clerk, as Norman Goodman's agent, rejected the Petition as untimely under state law.

On or about November 13, 1998, the Receiver commenced this action. In his Complaint, the Receiver admits that the debtors are liable for the payment of real estate taxes for the Property, (*see* Complaint ¶ 9), but contends that the debtors have been aggrieved by the Assessment because it is erroneous and excessive. (*See id.* ¶ 11.) He admits that under applicable state law, October 23, 1998 was the last day for the debtors to file the Petition, (*see id.* ¶ 14), but asserts that, by virtue of the commencement of their chapter 11 case, their time to do so was extended to August 26, 2000, pursuant to § 108(a) of the Bankruptcy Code. (*See id.*) Accordingly, the Receiver seeks a mandatory injunction pursuant to Fed.R.Bankr.P. 7001 and § 108(a) of the Bankruptcy Code directing the defendants to accept the Petition *nunc pro tunc* to October 23, 1998.

### Discussion

We have subject matter jurisdiction of this matter under 28 U.S.C. §§ 1334(b) and 157(a) and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

Fed.R.Bankr.P. 7056 makes Fed. R.Civ.P. 56 applicable herein. In relevant part, Rule 56 states that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (same). Because the parties agree on all the material facts, these matters are ripe for summary judgment.

The parties agree that an Article 7 proceeding under the New York Real Property Actions and Proceedings Law is the exclusive means for the debtors to challenge the Assessment. Likewise, they agree that pursuant to § 165 of the New York City Charter, May 25, 1998 is the date that the Assessment became "final", and the date on which the debtors' right to commence a Tax Action accrued, and that pursuant to § 166 of the New York City Charter, the debtors had to commence a Tax Action prior to October 25, 1998.[1]

---

1. Section 165 states that:
 The final determination of the tax commission upon any application for the of an assessment shall be rendered not later than the twenty-fifth day of May. Otherwise, the assessment objected to shall be deemed to be the final determination of the tax commission.

They also agree that because October 25, 1998 was a Sunday, the last day on which the debtors could timely file the Petition under § 166 was Friday, October 23, 1998.

Section 108(a) of the Bankruptcy Code states:

If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

11 U.S.C. § 108(a); *see also id.* § 1107 (debtor in possession is accorded all the rights of a trustee). As of the Filing Date, the debtors had the right to file the Tax Action. The Receiver attempted to file the Petition on behalf of the debtors on October 27, 1998, i.e., four days after the date specified in the New York City Charter, but within two years of the Filing Date. Accordingly, the issue that we must resolve is whether § 108(a) of the Bankruptcy Code extends the time under the New York City New York City Charter in

which Rudin, acting on behalf of the debtors, can commence a Tax Action.

Rudin urges us to grant him summary judgment on the Complaint. He contends that pursuant to the plain language of the New York City Charter and Bankruptcy Code, and by application of the Supremacy and Bankruptcy Clauses of the U.S. Constitution,[2] § 108(a) supercedes §§ 165 and 166 of the Charter, such that the Tax Action was timely filed.

▪ The defendants have never challenged our September Order continuing Rudin as the receiver of the Property, and in the Joint Stipulation they agree that Rudin "is authorized to file a Tax Certiorari Petition . . . to seek review of taxes that are erroneously or improperly assessed against the Property." (Joint Stipulation ¶ 1.) Still, they contend that Rudin lacks standing to bring this adversary proceeding. We understand them to argue that because § 105(b) of the Bankruptcy Code expressly prohibits us from appointing a receiver, we erred in continuing Rudin's appointment after the Filing Date and further, that as a "receiver", Rudin falls outside the scope of § 108(a) of the Bankruptcy Code. To buttress their argument, the defendants cite to § 11e of the Bankruptcy Act, which is the predecessor of § 108. They are correct that by its terms, § 11e applied to a "receiver or trustee"[3] and

---

*N.Y. City Charter,* chap. 7, § 165 (New York Legal Publishing Corp.1989). Section 166 states that:

A proceeding to review or correct on the merits any final determination of the tax commission may be had as provided by law, and if brought to review a determination mentioned in [N.Y.C.C. § 165] must be commenced before the twenty-fifth day of October following the time when the determination sought to be reviewed or corrected was made.

*N.Y. City Charter,* chap. 7, § 166 (New York Legal Publishing Corp.1989).

**2.** The Bankruptcy Clause of the U.S. Constitution states that "[t]he Congress shall have Power . . . [t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States. . . ." U.S. Const. art. I, § 8, cl. 4. The Supremacy Clause reads, as follows:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

**3.** That section provided, as follows:

A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitations fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy. . . .

that § 108 does not include the term "receiver" because § 105(b) of the Bankruptcy Code forecloses a court from appointing one. To be sure, that section provides that "[n]otwithstanding [section 105(a) ], a court may not appoint a receiver in a case under [Title 11]." 11 U.S.C. § 105(b). That means that we cannot appoint a receiver in lieu of a bankruptcy trustee. *See In re Memorial Estates, Inc.*, 797 F.2d 516, 519 (7th Cir.1986); *Craig v. McCarty Ranch Trust (In re Cassidy Land and Cattle Co., Inc.)*, 836 F.2d 1130, 1133 (8th Cir.1988) *cert. denied* 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988). It does not preclude us from continuing the appointment of a state court equity receiver, like Rudin, to manage real property pursuant to § 543(d) of the Bankruptcy Code.[4] *See In re Memorial Estates, Inc.*, 797 F.2d at 519; *In re Cassidy Land and Cattle Co., Inc.*, 836 F.2d at 1133; *see also* 1 *Norton Bankruptcy Law and Practice* § 4:48 (2d ed.1999 supp.) (appointment of receiver proper where bankruptcy court has jurisdiction over related matter, and where the appointment of the a receiver is proper under applicable nonbankruptcy law); 16 Charles Alan Wright, Et Al. *Federal Practice and Procedure* § 3925, n. 3 (2d ed.1996) (while Bankruptcy Code explicitly prohibits appointment of receiver, appointment is proper when state court foreclosure proceeding is removed to bankruptcy court upon filing of petition). That is what we did by our September Order. Thus, we do not read the exclusion of a "receiver" from § 108 to bar a state court equity receiver like Rudin from obtaining the relief he is seeking on behalf of the debtors, provided that he is otherwise authorized to do so. The defendants concede that he is so authorized. (*See* Joint Statement ¶ 1.) The state court's March Order provides, in part, that the "Receiver be and hereby is

authorized and directed ... to institute and carry on proceedings with respect to taxes, including tax certiorari proceedings...." *NationsBank of Tennessee v. Olympia & York Maiden Lane Co.*, No. 123396/94 (N.Y.Sup.Ct. Mar. 5, 1997). To that end, it authorizes Rudin to "hire counsel and carry on all legal proceedings when needed to fulfill his duties to operate and preserve the [Property]...." *Id.* We find that Rudin has standing to bring this complaint on behalf of the debtors.

■ Section 108(a) speaks of a "period within which the debtor may commence an action." 11 U.S.C. § 108(a). The Bankruptcy Code does not define the term "period". The parties agree, and our research confirms, that there does not appear to be any reported decision defining that term, or applying § 108(a) to § 166 of the New York City Charter. The defendants urge us to construe § 108(a) by its plain language. Quoting Black's Law Dictionary, they contend that we should define the term "period" as "[a]ny point, space or division of time." *Black's Law Dictionary*, 1138 (6th ed. 1990) They distinguish that term from a "date" which Black's defines as "the time given or specified—in some way ascertained or fixed." *Id.* at 395. Applying those definitions, and citing *R.R. Heywood Co. v. Boyland*, 140 N.Y.S.2d 769 (N.Y.Sup.Ct.1955), they deny that § 166 establishes a period within which Rudin had to file the Petition for purposes of § 108(a) of the Bankruptcy Code, and contend that October 25 is a "terminal date" which cannot be extended under any circumstance.

■ In *Heywood*, the plaintiff filed a tax certiorari petition under § 166 of the New York City Charter on October 25, and

---

Bankruptcy Act § 11(e) (repealed 1978).

**4.** Section 543 states in relevant part that:
 After notice and hearing, the bankruptcy court—
 (1) may excuse compliance with [the turnover provisions] of this section if the inter-

ests of creditors ... would be better served by permitting a custodian to continue in possession, custody, or control of such property....
11 U.S.C. § 543(d)(1).

argued that because October 24 was a Sunday, by application of § 25–a of New York's General Construction Law ("GCL"), the petition was timely. *See* 140 N.Y.S.2d at 770–71. GCL § 25–a stated, in part, that "[w]hen any period of time, computed from a certain day, within which or after which or before which an act is authorized or required to be done, ends on a Sunday ... such act may be done on the next succeeding business day." *Id.* The court rejected that argument, holding that

> [Section 25–a] refers to a "period of time" computed from a certain day. The New York City Charter, § 166, does not fix any period of time within which or after which or before which the proceeding must be brought. The provision is that it "must be commenced before the twenty-fifty day of October." No computation is involved here and the Charter, section 166, does not require any computation of time.

*Heywood,* 140 N.Y.S.2d at 771. Even assuming, *arguendo,* that for purposes of § 166, September 25 is a "terminal date" that cannot be extended under New York

State law,[5] that does not mean that we must dismiss the Complaint. Rudin is correct that courts read § 108(a) broadly[6] and that we can apply it to extend a limitations period, even when the underlying state or federal law does not permit such an extension. *See Mishkin v. Ageloff,* 1998 WL 651065 (S.D.N.Y. September 23, 1998).[7] In any event, the defendants concede that by application of the Supremacy Clause, we can grant Rudin relief under his Complaint provided that § 108(a) applies to the New York City Charter. (*See* February 10, 1999 Transcript at 61–62). As noted, the thrust of the defendants' argument in opposition to Rudin's motion, and in support of their own, is that § 108(a) is not applicable because § 166 of the New York City Charter does not fix a "period within which the debtor[s] may commence an action."

■ We agree with defendants that because § 108(a) is unambiguous we must construe it to give effect to the plain language of the statute. *See Atlantic Mut. Ins. Co. v. Commissioner of Internal Rev-*

---

**5.** *Heywood* does not necessarily represent the law in New York State. *Compare Elbin Realty No. 2. v. Boyland,* 16 N.Y.2d 599, 261 N.Y.S.2d 56, 209 N.E.2d 103 (1965) (applying GCL § 25–a to § 160 of the New York City Charter); *Fay v. Boyland,* 18 Misc.2d 150, 187 N.Y.S.2d 504 (N.Y.Sup.Ct.1959) (criticizing *Heywood* and applying GCL § 25–a to § 163 of the New York City Charter).

**6.** Courts in this district have applied § 108(a) to extend a wide range of statutory limitations. *See, e.g., Mishkin v. Ageoff,* No. 97 Civ. 2690, 1998 WL 651065, *6 (S.D.N.Y. Sept. 23, 1998) (applying § 108(a) to extend the time to commence an action under § 10(b) of the Securities and Exchange Act of 1934; *GNK Enterprises, Inc. v. ConAgra, Inc. (In re GNK Enterprises, Inc.),* 197 B.R. 444, 448 (Bankr. S.D.N.Y.1996) (finding that § 108(a) could apply to extend the time to commence state fraud, misrepresentation, breach of contract, and negligence actions, but did not grant extensions because both the nonbankruptcy prescriptive periods and the § 108(a) extension had expired before actions were commenced); *Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.),* 181 B.R. 730,

741 n. 17 (Bankr.S.D.N.Y.1995) (applying § 108(a) to extend time commence an action under N.Y. Lien Law § 77.2); *Eisenberg v. Feiner (In re Ahead by a Length),* 100 B.R. 157, 162–63 (Bankr.S.D.N.Y.1989) (applying § 108(a) to extend time to commence an action under the RICO Act); *Greenwald v. Axelrod (In re Greenwald),* 48 B.R. 263, 273 (S.D.N.Y.1984) (applying § 108(a) to extend time to commence an action under 42 U.S.C. § 1983); *Murdock v. Plymouth Enterprises, Inc. (In re Curtina Int'n, Inc.),* 23 B.R. 969, 975 (Bankr.S.D.N.Y.1982) (applying § 108(a) to extend time to commence an action under New York's bulk sales law).

**7.** In *Mishkin v. Ageloff,* No. 97 Civ. 2690, 1998 WL 651065, *4 (S.D.N.Y. Sept. 23, 1998), the court applied § 108(a) to extend the time to commence an action under § 10(b) of the Securities and Exchange Act of 1934, even though the Supreme Court had held in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), that such claims must be brought within one year of date of discovery, but no latter than three years from alleged fraud, and that such time period had run.

*enue,* 523 U.S. 382, ——, 118 S.Ct. 1413, 1417, 140 L.Ed.2d 542 (1998) (" '[T]he court . . . must give full effect to the unambiguously expressed intent of Congress' ") quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694; *Escondido Mut. Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 80 L.Ed.2d 753 (1984) (" 'Absent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive.' ") (citations omitted). We also agree that it is appropriate to apply Black's Law Dictionary's definition of the term "period" to this statute. However, we disagree with the defendants' construction of § 166 of the New York City Charter because it ignores § 165. As noted, that section provides that May 25 of each year is the date on which tax assessments become final. *See N.Y. City Charter,* chap. 7, § 165. As the parties agree, that is the day on which "[t]he Debtor's cause of action to review or correct the Assessment on the merits pursuant to state law accrued. . . ." (Joint Statement ¶ 7.) The interval between the date the action accrued under § 165, i.e. May 25, and the so-called "terminal date" for filing the Petition under § 166, i.e. September 23, plainly is a "period" as Black's Law Dictionary defines, and § 108(a) uses, the term.

Miscellaneous state court decisions relating to § 166 of the New York City Charter, while not on point, support our construction of the statutes. *Heywood* aside, those cases either refer to the time limitation in § 166 as a statute of limitations or, in describing its effect, use terminology appropriate when discussing a statute of limitations. *See, e.g., People v. Lilly,* 295 N.Y. 354, 355, 67 N.E.2d 579 (1946) ("[we affirm dismissal] since service on the city was not made within the time limited by section 166 of the New York City Charter"); *People v. Miller,* 288 N.Y. 163, 167, 42 N.E.2d 469 (1942) (court cited

to "the limitations fixed by section 166 of the Charter", and "the statutory limitations [set by § 166]"); *78 South First Street Housing Dev. Fund Corp. v. Crotty,* 150 A.D.2d 218, 220, 541 N.Y.S.2d 388, 390 (N.Y.App.Div.1989) (Milonas, J. dissenting) ("[Action] was clearly brought after the expiration of the time specified by [§ 166], and claims asserted therein are, therefore, time-barred.") *rev.* 75 N.Y.2d 982, 555 N.E.2d 906, 556 N.Y.S.2d 509 (1990) (adopting reasoning of dissent); *G.A.D.Holding Co. v. Department of Finance,* 192 A.D.2d 441, 442, 596 N.Y.S.2d 799 (1993) ("petitioner is time-barred from review of the 1990–1991 tax assessment [pursuant to § 166]"); *Fleetair, Inc. v. Tax Commission of City of N.Y.,* 15 Misc.2d 502, 504, 181 N.Y.S.2d 645 (1958) ("[third-party defendant] is barred by the time limitation contained in section 166 of the New York City Charter."); *Alwalt Realty Corp. v. Boyland,* 5 Misc.2d 1061, 1063, 160 N.Y.S.2d 504, 507 (1957) ("The failure to institute the proper [article 7] proceeding within the time allowed [by § 166] is a fatal bar to relief."); *Kaydel Realty Co. v. Miller,* 255 A.D. 449, 450, 7 N.Y.S.2d 963, 964 (N.Y.App.Div.1938) (§§ 165 and 166 of the New York City Charter fix May 25th and October 25th as a five-month period within which tax certiorari proceeding may be commenced in any given year; such an action can be brought at any time between those dates, and is time barred if not brought before October 25).

■ Alternatively, the defendants argue that if we apply § 108(a), we must do so in light of the particular "equities" of this case. They contend that we must dismiss the Complaint because Rudin had ample opportunity to file the Petition in a timely manner. To be sure, as the defendants' contend, in appropriate circumstances, courts deny relief under § 108(a). However we are not aware of any case in which a court has done so on equitable

grounds,[8] and as Rudin correctly asserts, the statute does not mention the equities of a case as a factor relevant to an analysis under § 108(a). Rather, as the *Mishkin* court found,

> section 108 applies for a fixed period of time under a limited set of circumstances, and it exists by statute, which statute leaves no room for an argument of non-application based on a particular set of circumstances, equitable or otherwise . . . .

*Mishkin v. Ageloff,* 1998 WL 651065, at*6 (citations and footnote omitted). We hold the defendants to the plain language of the statute and reject their assertion that we should consider the equities of the case in considering these motions. In any event, even assuming, *arguendo,* that the equities are relevant to these motions, the undisputed facts plainly do not support a finding that it is inequitable to grant the Receiver summary judgment on his Complaint.

### Conclusion

We grant the Receiver summary judgment on his Complaint. We deny the defendants' motion for summary judgment dismissing the Complaint.

SETTLE JUDGMENT

---

**8.** The cases that the defendants cite are not to the contrary. In *Pereira v. Centel Corp. (In re Argo Communications Corp.),* 134 B.R. 776, 784 (Bankr.S.D.N.Y.1991), a chapter 7 trustee for a corporate debtor sued certain related corporations seeking, among other things, money damages for their alleged breach of fiduciary duty, corporate waste, breach of contract, and negligent and fraudulent misrepresentation. Among other things, the defendants moved to dismiss portions of the complaint on the grounds that the claims were time barred under New York state law. In discussing the application of § 108(a) to the motion, the court stated that:

> it necessitates a two part analysis: first we must determine whether any claim that may have existed in favor of the debtor was still maintainable on the petition date under applicable nonbankruptcy law; and second, whether the two year extension is warranted.

*Id.* at 784 (citation omitted). Here, the defendants seem to argue that the second part of the proposed analysis creates an "equity test". However, the *Argo* court did not apply it in that fashion and ultimately found that § 108(a) was inapplicable because more than two years had lapsed since the commencement of the case when the trustee initiated the litigation. *See id.* at 784–85.

The other cases cited by the defendants are equally inapposite. In those cases, the courts

did not apply § 108(a) either because the underlying claim accrued postpetition, the claim was time-barred prior to commencement of the bankruptcy case, or because the nonbankruptcy prescriptive period and the § 108(a) extension period had run prior to commencement of the action. *See Independent Fire Ins. Co. v. Pender (In re Phillip),* 948 F.2d 985, 987 (5th Cir.1991) (in a converted chapter 7 case, holding that two-year extension provided for by § 108(a) does not apply to claims that arose during the pendency of the chapter 11 case because the period begins to run when order for relief is entered); *Balaber–Strauss v. GTE Supply (In re Coin Phones, Inc.),* 153 B.R. 135, 142–43 (Bankr.S.D.N.Y.1993) (among other things, court dismissed trustee's breach of warranty, breach of contract, and willful misrepresentation claims because the complaint was brought after both the contractual prescriptive period and the two-year extension provided by § 108(a) had run); *Baehr v. Touche Ross & Co.,* 62 B.R. 793, 796–97 (E.D.Pa.1986) (court held that negligence claim was time barred because the complaint was brought after both the nonbankruptcy prescriptive period and the two-year extension provided by § 108(a) had run); *Dynaco Corp. v. KLA Instruments Corp. (In re Dynaco Corp.),* 200 B.R. 750, 760 (Bankr.D.N.H.1996) (§ 108(a) not applicable to extend debtor-in-possession's time because debtor's cause of action was time-barred prior to commencement of chapter 11 case).